# Exhibit 9

# Report of Dr. Saran S. Rosner, M.D., P.C.

## SARAN S. ROSNER, M.D., P.C.
### NEUROLOGICAL SURGERY
245 Saw Mill River Rd., Suite 101
Hawthorne, N.Y. 10532

(914) 741-2666

November 6, 2023



### INDEPENDENT MEDICAL EXAMINATION

**RE:**
Caption:
Plaintiff against

Index #:
Date of Accident: July 7, 2022

Dear Ms.

I performed an independent medical examination of Mr. ▮ on November 6, 2023 in my office at 245 Saw Mill River Road, Hawthorne, New York. Mr. ▮ came to the office with Mr. Manuel Cantor, a representative of the law firm of Gorayeb & Associates, P.C., who represent Mr. ▮ in this matter. Mr. Cantor accompanied his client, Mr. ▮ for the entirety of my examination of him. Mr. Manuel Cantor did not take any notes during the examination.

November 6, 2023
RE: ███████████
Page 2

A professional translator, Mr. William Blechingberg of Morningside Translation provided English to Spanish and Spanish to English translation for my entire examination of Mr. ███████████ I invited Mr. Cantor who is fluent in English and Spanish to please advise me should he have perceived any miscommunication. Mr. Cantor did not do so, and acknowledged that the translation was sound and accurate. Mr. ███████████ provided me with photo identification in the form of a New York State Identification Card, which was issued on December 28, 2022. I advised Mr. ███████████ of the restrictions which pertain to an independent medical exam and specifically informed him that no doctor-patient relationship existed between us.

A member of my office staff, Ms. Dale H.-C., chaperoned my examination of Mr. ███████████ from its beginning to its end.

**MATERIALS REVIEWED:** In preparing this report, I have reviewed the following materials: Verified Bill of Particulars index # ███████████, Supplemental Bill of Particulars index # ███████████, report of x-ray of the right shoulder of July 20, 2022; report of MRI of the cervical spine of September 6, 2022; State of New York Workers' Compensation Board first report of injury report type (MTC) 02-change of July 25, 2022; State of New York Workers' Compensation Board subsequent report of injury report type (MTC) SX-Full Suspension of July 27, 2022; outpatient care record of July 18, 2022 authored by Robby Mahadeo, M.D.; outpatient care note of July 20, 2022 authored by Jessica Ma, P.A.; outpatient care record of July 22, 2022 authored by Janeen Miraglia, D.O.; outpatient care note of July 24, 2022 authored by Katrina Sawyers, P.A.; outpatient care note of July 25, 2022 authored by Faton Bytyci, M.D.; outpatient note of August 16, 2022 authored by Jeffrey Kaplan, M.D.; outpatient note of Ponce Acupuncture, P.C., of August 25, 2022 authored by Mengron Li; L.Ac. independent orthopedic examination of November 8, 2022 authored by Thomas Albus, M.D.;

November 6, 2023
RE: █████████████
Page 3

independent orthopedic examination of January 19, 2023 authored by Mitchell Goldstein, M.D.; followup examination of January 9, 2023 authored by John J. McGee, D.O.; Examination Before Trial of ████████████████ of June 16, 2023; Examination Before Trial of ████████████████ of August 23, 2023; and, State of New York Workers' Compensation Board Employee Claim C-3 Form of July 27, 2022.

Neither Mr. ████ nor his representative Mr. Cantor provided me with any additional records, documents, or diagnostic studies for my review.

**HISTORY OF INJURY:** Mr. ████████████████████ is a 50-year-old right-handed man who claims injury from an event, which occurred while he was at work on July 7, 2022. Mr. ████████ told me that on that date, he was about to transfer to a scaffold from a balcony, when he lost his balance and righted himself by pulling up on his lifeline with his right arm and hand. In his Examination Before Trial, Mr. ████████████ reported that he was about to step from a balcony onto a scaffold, when the scaffold shifted to his left and he pulled himself back onto the balcony using his lifeline and his right arm and hand. Mr. ████████████ informed me that he was "hanging" onto the lifeline with his right upper extremity. However, the description which he offered in his Examination Before Trial did not indicate that Mr. ████ was hanging from his lifeline. Mr. ████████ indicated that he did not fall during this event. (Examination Before Trial ████████████████████ June 16, 2023, page 126-128.)

Mr. ████████████ said that he experienced the immediate onset of pain in his right shoulder, right elbow, right wrist, back, and neck. He reported to me that he also experienced pain that radiated into his right arm and forearm to the level of his wrist and pain, which radiated from his lower back into his right buttock and posterior thigh.

November 6, 2023
RE: ▮▮▮▮▮▮▮▮
Page 4

Notwithstanding these several complaints, Mr. ▮▮▮▮▮ continued to work at his usual employ, and did not seek medical attention on the day of the accident for these complaints (Examination Before Trial, ▮▮▮▮▮, August 28, 2023, page 141, lines 5 through 8 and Examination Before Trial, ▮▮▮▮▮ June 16, 2023, lines 5 through 25 and page 57, line 4).

**SUBSEQUENT COURSE AND TREATMENT:** Eleven days after the accident of record, Mr. ▮▮▮▮▮ presented to Summit CityMD NY, where he complained of pain in his right shoulder and upper back. According to the Summit CityMD record, Mr. ▮▮▮▮▮ had called his PCP after the event, who prescribed pain medication for him. Robby Mahadeo, M.D., saw Mr. ▮▮▮▮▮ at Summit CityMD on July 18, 2022, and on examination, he found no abnormalities of Mr. ▮▮▮▮▮ right upper extremity generally. Specifically, Dr. Mahadeo noted that Mr. ▮▮▮▮▮ had full strength and sensation of his arm, forearm, and hand. Mr. ▮▮▮▮▮ was instructed to discontinue work for the next three days, afterward he was told to return to CityMD.

On July 20, 2022, Mr. ▮▮▮▮▮ went back to Summit CityMD. Jessica Ma, P.A., reevaluated Mr. ▮▮▮▮▮ that day. Again, Mr. ▮▮▮▮▮ reported pain in his right shoulder and right upper back, with which no numbness or weakness of his right upper extremity was associated. An x-ray of Mr. ▮▮▮▮▮ right shoulder was performed, which revealed no abnormalities. Once again, on examination, Mr. ▮▮▮▮▮ was found to have no weakness or sensory loss in his right upper extremity. Although he had no midline cervical tenderness, some right paravertebral tenderness was noted by Ms. Ma. Mr. ▮▮▮▮▮ was allowed to return to work on light duty. He was referred for orthopedic evaluation of his right elbow and shoulder complaints.

November 6, 2023
RE: ███████████
Page 5

Two days later, Janeen Miraglia, D.O., reevaluated Mr. ███████ at Summit CityMD. Dr. Miraglia charted that Mr. ███████ had tenderness of his posterior scapula, pain-mediated weakness of his right arm at the shoulder (positive empty can test), but no weakness or sensory loss was otherwise identified in his right upper extremity. Additionally, Dr. Miraglia examined Mr. ███████ cervical spine. He found no tenderness or spasm of Mr. ███████ cervical spine or paracervical musculature, but noted tenderness of Mr. ███████ right trapezius with mild spasm. Dr. Miraglia advised that Mr. ███████ continued to perform light duty at work, during which he was told to wear a right arm sling.

Mr. ███████ was seen twice more at Summit CityMD, once on July 24, 2022 and again on July 25, 2022. Mr. ███████ symptoms and signs were akin to those which had been identified at Summit CityMD on Mr. ███████ previous visits. He denied numbness and weakness. Tenderness of Mr. ███████ medial-inferior scapula was identified, and he remained neurologically intact. Naproxen 500 mg b.i.d. was prescribed. The following day, July 25, 2022, Mr. ███████ was seen at Summit CityMD by Faton Bytyci, M.D., a physician board certified in family medicine and sports medicine. Dr. Bytyci learned that Mr. ███████ had tripped at work and hyperextended his right arm at the shoulder to prevent a fall. Dr. Bytyci noted that Mr. ███████ once more "denie(d) any weakness, tingling, numbness, sensation to right upper extremity." Dr. Bytyci charted that Mr. ███████ also "denie(d) any neck injury." Dr. Bytyci recorded a fairly detailed examination of Mr. ███████ cervical spine in which he found no abnormalities. Mr. ███████ was noted to have full range of cervical motion in all planes, no tenderness, and no trigger points. Like his colleagues before him, Dr. Bytyci did not identify any neurologic abnormalities on his physical examination of Mr. ███████

November 6, 2023
RE: ███████████
Page 6

Upon concluding his evaluation of Mr. ███████ Dr. Bytyci surmised that Mr. ███████ had sustained a sprain of the AC ligament, a strain of the right trapezius muscle, and a strain of the thoracic region. He prescribed cyclobenzaprine, a muscle relaxant, to supplement the naproxen, which had been given to Mr. ███████ the day before.

Notably, Mr. ███████ was seen five times, by five different care providers at Summit CityMD, none of whom indicated that Mr. ███████ had spinal complaints cervical or lumbar, nor did they find neurologic deficits on their serial examinations of Mr. ███████.

Later, at the behest of his attorney, Mr. ███████ presented to Jeffrey Kaplan, M.D., an orthopedic surgeon, for care (Examination Before Trial, ███████ August 28, 2023, page 151, lines 4 through 7). Apparently unaware that Mr. ███████ was not actually standing on the scaffold when the incident occurred, Dr. Kaplan noted that Mr. ███████ "right upper extremity was pulled hard when the scaffold platform shifted" (Examination Before Trial, ███████ June 16, 2023, page 128, lines 23 through 25). Additionally, Dr. Kaplan reported that Mr. ███████ had, in addition to his right upper extremity complaints, neck pain. Also, Dr. Kaplan referenced Mr. ███████ report of "improving" low back pain. "Tightness and tenderness" of Mr. ███████ cervical paraspinous musculature and his right trapezius, along with a positive Spurling maneuver was identified by Dr. Kaplan on his examination of Mr. ███████. Therapeutically, Dr. Kaplan changed Mr. ███████ nonsteroidal anti-inflammatory medication from naproxen to diclofenac. Diagnostically, he referred Mr. ███████ for MRI imaging of the cervical spine.

The MRI examination of Mr. ███████ cervical spine, which had been requested by Dr. Kaplan, was completed at Kolb Radiology on September 6, 2022.

November 6, 2023
RE: 
Page 7

Dr. Kolb reported that he saw posterior disc herniations at C3-C4, C4-C5, and C5-C6. The disc herniation at C3-C4, C5-C6, and C6-C7, all lateralized to Mr. ███ asymptomatic left side. Dr. Kolb characterized the disc herniations at C4-C5 and C6-C7 as "shallow." Moreover, according to Dr. Kolb the disc herniation at C5-C6 impinged directly upon the spinal cord, and the so-called shallow "disc herniation" at C4-C5 somehow "abutt(ed) the spinal cord.

Just before Mr. ███ underwent MRI imaging of the cervical spine, he went to Ponce Acupuncture, P.C., for treatment. He was seen at Ponce Acupuncture, P.C., by Mengrong Li, LAc. Ms. Li in her "COMPREHENSIVE ACUPUNCTURE REPORT" of August 25, 2022 charted that Mr. ███ was injured in a motor vehicle accident and was also hurt when he jumped from stairs to a balcony. Neck pain, mid back pain, and lower back pain were among the complaints, which Mr. ███ reported to Ms. Li on August 25, 2022. Remarkably, Ms. Li found limited range of spinal motion of all segments of ███ spinal column and positive "orthopedic test(s)" of every orthopedic maneuver performed across the board.

Soon after the accident of record, Mr. ███ came under the care of Matthew Grimm, M.D., to whom he was referred by his attorney (Examination Before Trial, ███ August 28, 2023, page 185, lines 14 through 16). Dr. Grimm is a physiatrist who specializes in pain management. I do not have Dr. Grimm's care records before me, but learned from Mr. ███ testimony that Dr. Grimm provided him with a single injection to his back and one injection to his cervical spine from which Mr. ███ gleaned a bit of symptomatic improvement (8/10 to 6/10), (Examination Before Trial, ███ August 28, 2023, page 188, lines 14 through 25).

November 6, 2023
RE: ███████████
Page 8

While he was being treated for these several complaints, which followed the July 7, 2022 at work event, Mr. ███████ had two independent examinations performed by board certified orthopedic surgeons. On November 8, 2022, Thomas Albus, M.D., saw Mr. ███████. Dr. Albus did not at all address Mr. ███████ spinal issues cervical or lumbar. He did, however, reference the results of an MRI of Mr. ███████ lumbar spine, which had been performed at Kolb Radiology on October 5, 2022. Dr. Albus indicated that Mr. ███████ lumbar MRI of October 5, 2022 by report demonstrated herniations at L4-L5 and L5-S1, along with a bulge of the intervertebral disc at L3-L4. Of note, bulging of intervertebral discs does not represent a pathologic entity. Two months thereafter, Dr. Mitchell Goldstein performed an independent orthopedic examination of Mr. ███████. Dr. Goldstein reported that Mr. ███████ described pain in his lower back that radiated to his right leg, and neck pain, which referred to his right arm and forearm. Both Mr. ███████ upper extremity and lower extremity pain were joined by numbness. Inconsistent with the testimony, which Mr. ███████ had given in his EBT, Dr. Goldstein misconstrued that Mr. ███████ had "not worked since the injury." On his examination of Mr. ███████ on January 19, 2023, Dr. Goldstein found that Mr. ███████ had full strength in his upper extremities, "abnormal" sensory perception in a right median nerve distribution, and "soreness" on Spurling's test. Dr. Goldstein's examination of Mr. ███████ lumbar spine and lower extremities revealed right paralumbar tenderness, mild weakness of the right EHL and "abnormal" sensory perception in a right L4, L5, and S1 nerve root distribution. He also measured restriction of Mr. ███████ cervical and lumbar range of motion.

Contemporaneously with Mr. ███████ independent orthopedic examination by Dr. Goldstein, he underwent a "Follow-Up Examination" at Yellowstone Medical Rehabilitation, P.C. by his treating physiatrist John J. McGee, D.O.

November 6, 2023
RE: ███████████████
Page 9

Dr. McGee used a peculiar, idiosyncratic charting method, which rendered his report difficult to divine. On January 9, 2023, Mr. ███████████ had positive bilateral straight leg raising, full strength, normal sensation and normal reflexes according to Dr. McGee. Dr. McGee surmised that Mr. ███████████ had sprain/strains with radiculopathy and disc displacement of his cervical and lumbar spine, for which he of course recommended continued physical therapy.

**PRESENT SYMPTOMS AND COMPLAINTS:** Mr. ███████████ stated that he has intermittent neck pain. His neck pain occurs a few times per day and lasts an hour or so after its onset. Mr. ███████████ rated his neck pain at 7/10 on a VAS scale. More frequently, Mr. ███████████ experiences pain, which radiated into his right arm and forearm, which lasts 30-40 minutes and hovers at 6/10 in its intensity. Mr. ███████████ upper extremity pain on the right does not extend beyond his wrist, but he described numbness and paresthesias of the index, middle, and ring fingers of his right hand, which return every couple of hours and abate after 20 minutes or so. No pain or paresthesias referred to Mr. ███████████ left upper extremity.

Like his cervical pain, Mr. ███████████ lower back pain is not constant, but rather "comes and goes." Typically, Mr. ███████████ lower back pain presents a few times per day and lasts for 30 minutes. At times, right buttock and posterior thigh pain joined Mr. ███████████ lower back pain. Walking at a rapid pace and climbing stairs can be provocative of Mr. ███████████ right buttock and thigh pain. Mr. ███████████ indicated that his right lower extremity pain does not extend beyond the level of his knee. Infrequently, perhaps 2-3 times per week, numbness and paresthesias accompany Mr. ███████████ right posterior thigh pain. Such paresthesias last for about 30 minutes before they remit.

November 6, 2023
RE: █████████████████
Page 10

Similar to Mr. ████████ cervical symptoms, he gauged his lower back pain at 7/10 and his right lower extremity pain at 6/10. Mr. ████████ denied sphincteric dysfunction and reported that his left lower extremity was asymptomatic.

Mr. ████████ reckoned that he could walk a mile, stand for an hour, and sit comfortably for an hour-and-a-half before his lower back pain became preclusive.

Presently, Mr. ████████ undergoes physical therapy for his lower back once per week and does so as well for his neck once per week. Dr. Grimm has scheduled Mr. ████████ for another lumbar injection on November 12, 2023, as per Mr. ████████. Presently, Mr. ████████ does not take any prescription or OTC medications to mitigate his pain complaints. Further, Mr. ████ told me that no surgery has been planned for either his cervical or lumbar complaints. He indicated that should surgery be considered, he would first go forward with lumbar rather than cervical surgery.

**PAST MEDICAL HISTORY AND REVIEW OF SYSTEMS:** Mr. ████████ denied any medical allergies. He has been diagnosed as prediabetic and at the time of the accident of record was medicated with Farxiga, Janumet, and metformin for this condition. His medical records also indicate that Mr. ████████ was treated for hyperlipidemia with atorvastatin. Mr. ████████ stated that he discontinued all his medications about two months ago.

Although Mr. ████████ was vaccinated for COVID, he did prior to vaccination have a clinical COVID infection.

Arthroscopic surgery of Mr. ████████ right shoulder and excision of a large pyogenic granuloma to the right index finger comprised the only surgical procedures, which Mr. ████████ has undergone.

November 6, 2023
RE: ███████████████
Page 11

He continues to have some residual pain and stiffness of his right shoulder.

Mr. ███████████ denied any injuries or accidents either prior or subsequent to the July 7, 2022 incident, which occurred at his workplace.

**PERSONAL AND SOCIAL HISTORY:** Mr. ███████████ is married and has two children. He was employed in construction at the time of the accident of record. Mr. ███████████ told me that he discontinued work two days after the July 7, 2022 event. However, Mr. ███████ testified that he continued to work until July 26, 2022 (Examination Before Trial, ███████████ June 16, 2023, page 57, lines 22 through 24), but missed some days of work for medical treatment. Otherwise he worked in a light duty capacity "sweeping and cleaning" (Examination Before Trial, ███ ███████████ June 16, 2023, page 63, lines 14 through 15).

Mr. ███████████ denied the use of tobacco and alcohol.

**PHYSICAL EXAMINATION:** I examined Mr. ███████████ in the standing, sitting, supine, and prone positions. He presented as a well-developed appropriately groomed individual in no apparent discomfort. By his account, Mr. ███████ stood 5 feet 6 inches tall and weighed 174 pounds. I observed that he moved his head and neck freely in the course of conversation. Mr. Blechingberg preferred to stand to Mr. ███████ right side as he translated, and Mr. Cantor sat to Mr. ███████ left. I observed that Mr. ███████ freely rotated his head and neck to the right to communicate with Mr. Blechingberg and to his left to address Mr. Cantor. I also saw that Mr. ███████ arose from a seated position without the use of his arms for support. Mr. ███████ disrobed and dressed without assistance. He tied his examination gown in front of him well and removed and replaced his wristwatch with his right hand without any observable difficulty.

November 6, 2023
RE: ▮
Page 12

Mr. ▮ stood, walked, and transferred well. He walked forwards, backwards, and in a tandem fashion unremarkably. He turned in a circle using five steps to do so. Mr. ▮ was stable in Romberg's position. Mr. ▮ was able to bear weight in plantar flexion, dorsiflexion, and independently on each leg. Vertex compression referred some pain to Mr. ▮ neck. Straight leg raising was negative for pain in the sitting position, but in the supine position, straight leg raise testing referred pain to Mr. ▮ lower back and right thigh at 40 degrees. FABER's test was positive on the right. There was some lumbar tenderness at the L5-S1 level without associated spasm or deformity. There was tenderness over Mr. ▮ right anterior iliac crest and diffusely over his right buttock not specifically limited to the sciatic notch. There was no cervical tenderness, spasm, or deformity. Cervical and lumbar range of motion were assessed by measurement of Mr. ▮ active range of motion with a handheld goniometer. Lumbar flexion was performed to 85 degrees/90 degrees and lumbar extension was completed to 23 degrees/30 degrees. Cervical rotation to the right was measured at 70 degrees/80 degrees, cervical rotation to the left was full at 80 degrees/80 degrees. Cervical flexion was near full at 55 degrees/60 degrees and likewise cervical extension was completed to 45 degrees/50 degrees.

Cranial nerves II through XII were intact. Strength was tested to opposition in the major motor groups of Mr. ▮ upper and lower extremities except for subtle decrease in his right grip strength. I did not observe any atrophy, fasciculations, or muscle irritability.

November 6, 2023
RE: ███
Page 13

Mr. ███ arms right and left and his forearms right and left measured near equally in circumference. I measured the circumference of Mr. ███ forearms and arms with his arms in extension in front of him and he did not exhibit any drift or weakness when I did so. Measurement of Mr. ███ right and left calves similarly did not show any discrepancy. Sensation was tested to pin, touch, temperature, position, vibration, traced figures, and stereoagnosis. Mr. ███ exhibited some inconsistent loss of light touch sensation over the right posterior thigh between his knee and his buttocks. However, such sensory loss was not reproducible on repeat testing. There was no impairment of cortical sensation. Tinel signs were present over the right wrist, right elbow, and left fibular head. Deep tendon reflexes were preserved, symmetric, and nonpathologic, except for blunting of both patellar reflexes. There were no myelopathic findings. Toes were downgoing to plantar stimulation. Pulses were full. Cerebellar function was assessed by Mr. ███ performance of rapid alternating movements of finger-to-nose, heel-knee-shin, and heel-to-toe in the standing position, all of which were well performed.

**SUMMARY AND CONCLUSIONS:** Thus, Mr. ███ is a 50-year-old right-handed man who 16 months ago had an incident at work, where he righted himself onto the balcony where he was working, grasping his lifeline with his right hand and pulling himself upwards. Primarily, Mr. ███ experienced pain in his right shoulder and right elbow after this event. When Mr. ███ sought medical attention about two weeks after the subject accident, he was found to have some right paracervical tenderness, pain in his right trapezius and pain along his right scapula. He did not have actual symptoms or signs which referred to his neck, nor did he have any evidence of nerve root injury. No lumbar complaints at all were documented in the course of Mr. ███ several examinations by several different care providers.

Subsequently, Mr. ███ medical care was orchestrated by the attorney who represents him in this matter. MRI examinations of Mr. ███ cervical and lumbar spine were procured, which by report showed disc herniations at six different spinal segments.

November 6, 2023
RE: ███████████
Page 14

Absent my own review of these studies, I cannot comment on the reliability of the findings, which were reported by Thomas Kolb, Jr., M.D., who read them. Clearly, however, these so-called half-dozen disc herniations were of uncertain cause, age, and consequence. If real, they cannot be assigned to the accident of record with any degree of reasonable medical certainty.

From an objective neurosurgical perspective, I do not find evidence of spinal injury, radiculopathy, or myelopathy, on my examination of Mr. ███████████ His limitations are subjectively based and cannot be validated objectively.

I am a physician duly licensed to practice medicine and surgery in the State of New York and I attest under penalties of perjury that the information which I have provided in this report is true and accurate to the best of my knowledge as per CPLR 2106. Moreover, the conclusions, which I have given herein, are offered within a reasonable degree of medical certainty. However, I reserve the opportunity to amend these conclusions if I am provided with additional materials that require me to do so.

I attest to having the scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue in this case. I have current, relevant, knowledge and experience to render an opinion for this case, and my opinions and conclusions are based solely upon the review of the records submitted as well as the results of my examination. There is no conflict of interest known to me regarding this specific case. I have received no financial incentive or compensation that is dependent in any way on the opinion I have rendered. No delegation of this examination and/or review was rendered.

Sincerely,

Saran S. Rosner, M.D.