## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**IONIAN RE, LLC,**

                                     **Plaintiff,**

                                                              **Case 1:24-cv-07098**

**v.**

**GORAYEB & ASSOCIATES, P.C.; CHRISTOPHER J. GORAYEB; NY ORTHO, SPORTS MEDICINE & TRAUMA, P.C.; JEFFREY STONE KAPLAN, MD; MATTHEW P. GRIMM, MD; JOSEPH WEINSTEIN, D.O., P.C. D/B/A COMPREHENSIVE & ORTHOPEDIC SPINE CARE; JOSEPH WEINSTEIN, DO; ANDREW MEROLA, MD; KOLB RADIOLOGY P.C.; THOMAS M. KOLB, MD; LENOX HILL RADIOLOGY AND MEDICAL IMAGING ASSOCIATES, P.C.; and JOHN DOES 1-50**

                                     **Defendants.**

---

## FIRST AMENDED COMPLAINT

---

NOW COMES PLAINTIFF IONIAN RE, LLC (hereinafter referred to as "Plaintiff" or "Ionian") by and through its attorneys THE WILLIS LAW GROUP, LLC, alleges as follows:

## I.    JURISDICTION AND VENUE

1.  This is a civil action arising out of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*. This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964, and 28 U.S.C. § 1331 in that certain of the claims arise under the laws of the United States and over other claims herein under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2.  Venue is proper in this District under and pursuant to 18 U.S.C. § 1965, and pursuant to 28 U.S.C. § 1391, in that numerous of the acts, practices, and events giving rise to

the claims alleged in this Complaint occurred in this District, and many of the Defendants reside in this District.

## II.    THE PARTIES

### A.    Plaintiffs

3.  Plaintiff IONIAN RE, LLC is a limited liability company duly organized and existing under the laws of Vermont. At all times relevant herein, Ionian was authorized to conduct business in New York.

### B.    Defendants

#### i.    Legal Service Defendants

4.  Defendant GORAYEB & ASSOCIATES, P.C. ("Gorayeb Firm") is a professional corporation duly organized and existing under the laws of the State of New York. At all times relevant herein, the Gorayeb Firm maintained its principal place of business in the State of New York and is authorized to and does conduct business in New York.

5.  Upon information and belief, Defendant CHRISTOPHER J. GORAYEB ("Gorayeb" and together with Gorayeb Firm, the "Gorayeb Defendants" or the "Legal Service Defendants") resided in and was a citizen of the State of New Jersey. He is a named partner and sole shareholder of the Gorayeb Firm. At all times relevant herein, Gorayeb was licensed or otherwise authorized to practice law in the State of New York and was employed in the State of New York.

#### ii.    Medical Provider Defendants

6.  Defendant NY ORTHO, SPORTS MEDICINE & TRAUMA, P.C. ("NY Ortho") is a professional corporation duly organized and existing under the laws of the State of New York. At all times relevant herein, NY Ortho maintained its principal place of business in the State of New York and is authorized to and does conduct business in New York.

7.  Upon information and belief, Defendant JEFFREY STONE KAPLAN, MD ("Kaplan") resides in and is a citizen of the State of New York. At all relevant times, Kaplan has been licensed or otherwise authorized to practice medicine in the State of New York and/or State of New Jersey and was an owner, operator, officer, director and/or employee of NY Ortho.

8.  Upon information and belief, Defendant MATTHEW P. GRIMM, MD ("Grimm"), resides in and is a citizen of the State of New York. At all relevant times, Grimm has been licensed or otherwise authorized to practice medicine in the State of New York and/or State of New Jersey and was an owner, operator, officer, director and/or employee of NY Ortho.

9.  Defendant JOSEPH WEINSTEIN, D.O., P.C. d/b/a Comprehensive & Orthopedic Spine Care ("Weinstein Practice") is a professional corporation duly organized and existing under the laws of the State of New York. At all times relevant herein, the Weinstein Practice maintained its principal place of business in the State of New York and is authorized to and does conduct business in New York.

10. Upon information and belief, Defendant JOSEPH WEINSTEIN, DO ("Weinstein" and together with Weinstein Practice, the "Weinstein Defendants") resides in and is a citizen of the State of New York. At all relevant times herein, Weinstein has been licensed or otherwise authorized to practice medicine in the State of New York and/or State of New Jersey and was the owner, operator, officer, director and/or employee of the Weinstein Practice.

11. Upon information and belief, Defendant ANDREW MEROLA, MD ("Merola"), resides in and is a citizen of the State of New York. At all relevant times herein, Merola

has been licensed or otherwise authorized to practice medicine in the State of New York and/or State of New Jersey.

12. Defendant KOLB RADIOLOGY P.C. ("Kolb Practice") is a professional corporation duly organized and existing under the laws of the State of New York. At all times relevant herein, Kolb Practice maintained its principal place of business in the State of New York and is authorized to and does conduct business in New York.

13. Upon information and belief, Defendant THOMAS M. KOLB, MD ("Kolb" and together with Kolb Practice, the "Kolb Defendants") resides in and is a citizen of the State of New York. At all relevant times herein, Kolb has been licensed or otherwise authorized to practice medicine in the State of New York and/or State of New Jersey and was the owner, operator, officer, director and/or employee of Kolb Practice.

14. Defendant LENOX HILL RADIOLOGY AND MEDICAL IMAGING ASSOCIATES, P.C. ("Lenox Practice"), is a professional corporation duly organized and existing under the laws of the State of New York.  At all times relevant herein, the Lenox Practice maintained its principal place of business in the State of New York and is authorized to and does conduct business in New York.

15. The NY Ortho Defendants, the Weinstein Defendants, Merola, the Kolb Defendants, and the Lenox Practice are collectively referred to herein as the "Medical Provider Defendants."

16. The Legal Service Defendants and the Medical Provider Defendants are collectively referred to herein as "Defendants."

17.      Upon information and belief, in addition to the named Defendants, John Does 1-50 are individuals, including attorneys, law firms, medical providers or other persons and entities

whose level of participation and/or identities are currently unknown but who, through their actions and omissions, conspired with the named Defendants to violate 18 U.S.C. § 1962 by participating in the affairs of the RICO enterprise through a pattern of racketeering activity as well as violating various related laws.

## III.    FACTUAL BACKGROUND

### A.    Fraud Scheme

18. From at least 2018 to the present, Defendants, together with others known and unknown, for their financial benefit, orchestrated a widespread fraud scheme to defraud Plaintiff and others by systematically abusing the New York State Workers' Compensation and State Court systems to obtain insurance proceeds through (i) unlawfully grooming and recruiting construction workers into staging and perpetuating fake construction accidents that occurred in New York; (ii) preparing, and/or causing others to prepare, and collecting documentation containing knowingly false information and submitting, filing, prosecuting and asserting fraudulent workers' compensation claims and personal injury lawsuits on behalf of such construction workers using such documentation; (iii) providing or alleging to have provided medically unnecessary and excessive healthcare services to such construction workers for injuries that either do not exist or were not causally connected to the subject accident; and/or (iv) using the fraudulent diagnoses and medically unnecessary and excessive healthcare services to inflate the settlement values of worker's compensation and general liability claims and/or ensure a continue funnel of referrals for services (the "Fraud Scheme").

19. Generally, in the State of New York, under New York's Labor Law and Workers' Compensation Law, a worker injured on a construction site is entitled to compensation

from his employer through a workers' compensation claim and from the property owner, general contractor, and any subcontractors between them and the employer through a commercial general liability claim. Both claims are financially backed by policies of insurance, which is required in the State of New York.

20. A worker's compensation claim is initiated by filing documents with the New York State Workers' Compensation Board. This is typically done by an attorney to establish injuries to specific body parts and to authorize medical treatment and indemnity payments for the claimant. This is determined through additional forms and documentation submitted to the New York State Workers' Compensation Board by and through the claimant's attorney and directly by treating doctors and facilities. These forms and documentation, when they facially appear to comply with the medical treatment guidelines, are accepted and approved even when the information contained therein is false.

21. A general liability claim is typically initiated through the filing of a lawsuit in one of the Supreme Courts of the State of New York. It requires the filing of a verified Summons and Complaint that is usually filed at the same time as the workers' compensation claim or shortly thereafter. The verification is often done by the claimant's attorney. Subsequent to the Summons and Complaint, additional documentation known as original and supplemental Bills of Particular are prepared, verified by the claimant's attorney and served upon all parties to the lawsuit.

22. The documentation submitted through both the workers' compensation and general liability claims are thereafter used as a basis for settlement demands, and due to the strict nature of New York's workers' compensation and labor laws, the demands often

succeed. When the documentation submitted is fraudulent or contains fraudulent information, as is the case in the scheme described herein, the settlements become exorbitant when settlements should either be nominal or non-existent.

23. Here, the Defendants together constituted an association-in-fact enterprise generally structured as depicted below in Figure 1:

**Figure 1.**

Gorayeb Firm and Gorayeb – represent Claimants and referral to medical providers for medically unnecessary and/or unrelated medical treatment in personal injury lawsuits.
Runners – through OSHA training, recruit Claimants
Workers' Compensation Attorneys – represent Claimants in parallel workers' compensation claim
Claimants – non-English speaking; either stage accidents or exaggerate accidents/injuries
Medical Provider Defendants – provide and seek reimbursement for fraudulent medical treatment/services to Claimants, which also inflates settlement value
NY Ortho, Kaplan and Grimm – physical therapy, pain management and surgery for Claimants
Merola – surgery for Claimants
Weinstein Practice and Weinstein – surgery for Claimants
Kolb Practice and Kolb – radiology for Claimants
Lenox Practice – radiology for Claimants



30. As part of this Fraud Scheme, individuals known as "runners" ("Runners"), under the sponsorship and direction of the Gorayeb Defendants and in furtherance of the Fraud Scheme, conducted Spanish-language OSHA training required to work on construction projects and recruited construction workers ("Claimants") into staging and/or perpetuating fake construction accidents at various construction sites throughout New York.

31. On information and belief, as part of the recruitment process, Claimants were told that they would be paid for not working if they had a workplace injury. Further, Claimants were told that the amount of their economic benefits would increase if they had surgeries or rehabilitation, and that the economic benefits could continue for 225 weeks or more.

32. Regardless of any actual bodily injury stemming from the purported construction accidents, these Claimants were instructed by the Runners, under the direction of Gorayeb Defendants and on behalf of the Defendants, to fake and claim certain bodily injuries that purportedly resulted from such accidents and to seek medical treatment.

33. The Runners then referred and/or transported these Claimants to the Gorayeb Firm, where attorneys and/or other employees of the Gorayeb Firm met with these Claimants.

34. In return, the Runners generally received a referral fee for such referral.

35. The Gorayeb Firm represented the Claimants in personal injury lawsuits against the various parties involved with the construction project (*e.g.*, owner, general contractor, construction manager, etc.) for purported injuries that resulted from accidents on the construction projects.

36. The Gorayeb Defendants worked with Fogelgaren Forman & Bergman, LLP ("Fogelgaren Firm"), based on an agreement and understanding with the Fogelgaren Firm that the Fogelgaren Firm would represent Claimants in workers' compensation claims made to the New York State Workers' Compensation Board ("NY WCB") and Gorayeb Firm would represent Claimants in personal injury lawsuits, for the same purported injuries that resulted from accidents on the construction projects, in furtherance of the Fraud Scheme.

37. The Fogelgaren Firm's office and Gorayeb Firm's office are located on the same floor of the same building – the 19th floor of the building at 100 William St., New York, New York 10038.

38. Upon information and belief, following the Gorayeb Firm's intake of Claimants, the Claimants were then walked over to the Fogelgaren Firm.

39. During the intake of the Claimant at the Fogelgaren Firm and with the Gorayeb Firm's agreement, employees of the Fogelgaren Firm, not the Claimants, filled out Form C-3, the worker's compensation form used to initiate a workers' compensation claim, and filed the same on behalf of the Claimants.

40. Under the direction and in coordination with the Gorayeb Firm, the Fogelgaren Firm usually designated ongoing medical treatment by medical providers, including one or more of the Medical Provider Defendants herein, before Claimants were seen by such providers.

41. The Claimants were directed to those medical providers and did receive treatment from the network of Medical Providers as described herein.

42. For most Claimants, both personal injury lawsuits and workers' compensation claims were initiated and proceeded in parallel to personally benefit and to maximize profit for the Defendants.

43. In order to inflate settlement values and thereby effectuate higher profit for the Defendants, Gorayeb Defendants and/or others under their control, directed the Claimants to seek medical diagnosis and treatment from associated medical providers, including the Medical Provider Defendants, who provide a variety of services (radiology, physical therapy, pain management and orthopedic surgery) at facilities located in or to patients from multiple states, including New York and New Jersey.

44. Many of the Claimants are undocumented immigrants who do not speak English, and the Claimants, as part of the Fraud Scheme, were instructed to fake their injuries and to receive a myriad of healthcare services that were unnecessary, excessive, unwarranted and costly and/or not causally related to the alleged workplace accident.

45. As an incentive to attest to fraudulent accidents and injuries and to undergo unnecessary surgery, upon information and belief Claimants were offered litigation funding loans.

46. The Medical Provider Defendants knowingly provided false diagnoses, use of their facilities and resources, and unnecessary, excessive, unwarranted and costly medical services and/or medical services that were not causally related to the alleged workplace accident, for which the Medical Provider Defendants received compensation from workers' compensation insurance.

47. The Medical Provider Defendants understood and agreed that in turn for providing the false medical documentation needed for higher settlement values, the Gorayeb Defendants will continue to funnel patients to their offices.

---

48. As part of the Medical Provider Defendants agreement and contribution to the Fraud Scheme, they would ignore indications of staged accidents, manufacture injuries or intentionally ignore the pre-existing nature of such injuries, and created facially legitimate medical records that were in fact false in order to justify a course of treatment for their benefit.

49. The Medical Provider Defendants worked to benefit the Gorayeb Defendants. Specifically, armed with the fraudulently documented medical diagnoses and medical services allegedly related to the workplace accident and the parallel workers' compensation submissions, the Gorayeb Defendants fraudulently inflated the settlement values of personal injury lawsuits to extract greater settlement from general liability carriers, including from Plaintiff Ionian.  In return for same, the Medical Provider defendants would continue to receive patient referrals.

**B.** **Fraudulent Accident, Treatment and Claim/Lawsuit in Furtherance of Fraud Scheme**

50. As demonstrated herein, the Defendants engaged in the Fraud Scheme resulting in a number of fraudulent claims and lawsuits being filed.

51. For example, on behalf of the Defendants and in furtherance of the Fraud Scheme, the Legal Service Defendants represented the following individuals who staged an accident and/or claimed injuries that were either not sustained or were unrelated to the alleged accident in claims and lawsuits.

52. The Legal Service Defendants knew such accidents and injuries were fraudulent.

53. The Medical Provider Defendants provided unnecessary and excessive treatment unrelated to the claimed accident.

---

54. These Defendants have employed the Fraud Scheme in hundreds to thousands of similar claims across multiple insurance carriers in the State of New York.  In fact, on March 1, 2024, a separate civil RICO Complaint was filed by different plaintiffs in the United States District Court for the Eastern District of New York, Case No. 24-cv-01549- NG-LB naming these same defendants for perpetuating an identical fraudulent scheme of using runners and coordinating with medical providers to provide unnecessary treatment, billing records, and unsubstantiated diagnoses to defraud insurance carriers and reinsurers in the State of New York.

55. The following claims are representative of ones against Plaintiff herein that the Defendant's engaged in as part of the Fraud Scheme:

   i.      <u>Claimant A</u>

56.  Claimant A, who is believed to be the immediate relative of Claimant D herein, was allegedly injured on December 22, 2020, when struck by a piece of wood while working on a construction project in New York.  The construction project is the same one where Claimant D was allegedly injured as demonstrated below.

57. Contrary to Claimant A's claim, however, there was no accident at the job site and nothing happened to Claimant A.  Specifically, Claimant A worked from 8:00 a.m. to 4:40 p.m. alongside a co-worker on the alleged date of incident.  The co-worker observed no accident that day nor did he observe anything else happen to Claimant A.  In fact, Claimant A and his co-worker returned to work the following day and worked the entire day without any issues.

58. Following the alleged accident, Claimant A retained the Gorayeb Firm, and the Gorayeb Defendants began their direction of aggressive and unnecessary medical treatment of Claimant A and the prosecution of a general liability claim on behalf of

Claimant A. A lawsuit was filed on or about January 14, 2021 and signed and verified by Defendant Christopher Gorayeb himself two days prior. The lawsuit alleged personal injuries and damages stemming from negligence at the construction site in violation of New York's Labor Law. As demonstrated above, this accident did not occur thereby making the Summons and Complaint and other subsequent filings on behalf of Claimant A's attorney false.

59. The C3 for Claimant A, used to initiated his workers' compensation claim, was dated December 29, 2020, and indicated that the Claimant A was being treated by Defendant Kaplan yet Claimant A had not been seen by Defendant Kaplan at the time. Rather, Claimant A first saw Defendant Kaplan on or about January 7, 2021.

60. Under the direction of the Gorayeb Defendants and in coordination with the Medical Provider Defendants, what started out as a chief complaint of headache and head injury from being struck by a piece of wood, for which Claimant A was treated and released from the ER with a prescription for Tylenol and a Lidoderm patch, later became a fall on Claimant A's left knee and arms resulting in an alleged tear of the left ACL, neck and left shoulder injury, and immediate back pain in his low back. Years after the 2020 alleged injury, Dr. Merola, after Claimant A was referred to him by Dr. Kaplan, diagnosed Claimant A as being 100% disabled from work. As the accident did not occur, none of the diagnoses, treatments or disability ratings could exist; yet all were articulated, documented and relied upon only after Claimant A retained the Gorayeb Defendants and Medical Provider Defendants.

61. Notwithstanding the discrepancies in Claimant A's history of the accident and complaint, Claimant A was still given a series of treatment for such newfound injuries

including evaluations, MRI and physical therapy referrals by Dr. Kaplan of the NY Ortho Defendants, MRIs of the left knee, left shoulder, lumbar spine and cervical spine by the Kolb Defendants, epidural steroid injections by Dr. Grimm of the NY Ortho Defendants, and surgeries by Dr. Merola, including decompressive lumbar laminectomies, medial facetectomies, neuroforaminotomies, and decompression of neurological elements and nerve roots. Because Claimant A did not sustain any injuries to his left knee, left shoulder, lumbar spine and cervical spine from any workplace accident, Kolb Defendants, NY Ortho Defendants and Merola knew or should have known from their review of records available to them, including emergency room and imaging films, which they had access to and a duty to review in addition to generated MRI reports, that there was no and could not be evidence of acute injury to those bodily regions.

62. As further example, an independent orthopedic examination performed on Claimant A by Dr. Thomas Albus, M.D., on December 7, 2021 as part of the Workers' Compensation process, found that "there was no (0%) degree of causally related temporary disability" and Claimant A was able to "return to pre-injury work at full duty without any restrictions."

63. Furthermore, Dr. Daniel O'Connell, M.D., M.P.H., performed an independent neurological evaluation on Claimant A on August 24, 2021, as part of the Workers' Compensation process, which found that Claimant A's alleged post-concussion syndrome, post-traumatic headaches, cervical sprain/strain, and lumbar sprain/strain were all resolved. The examination of Claimant A also found that further causally related neurological treatment or physical therapy was not reasonable or necessary.

Claimant A's examination was notable for excessive pain behaviors and symptom exaggeration.   Claimant A was found to not be presently disabled secondary to the injuries sustained in the work-related incident and Claimant A was shown to be able to return to work on a full-time basis without any restrictions.

64. Based on Claimant A's medical and workers' compensation records, many of the medical services provided to Claimant A, and specifically those rendered by each and every Medical Services Defendant herein, were unnecessary, excessive and/or unwarranted because the injuries were either degenerative in nature (yet not reported as such) or did not exist in the first instance because the accident was staged and, thus, not causally related to this alleged accident.   Yet, the Medical Services Defendants submitted documentation to the New York State Workers' Compensation Board as if these injuries were causally connected and the Legal Services Defendants pursued claims on the same basis.

65. Further, each Medical Provider Defendant, directly or indirectly through the Fogelgaren Firm, electronically transmitted medical documents to the NY WCB for authorization and payment for medical services provided to Claimant A, which were fraudulent for reasons set forth above.  They also transmitted the same false documents to the Gorayeb Firm knowing that providing what facially appeared as favorable and legitimate medical records would be used by the Gorayeb Firm in a variety of ways, including, but not limited to, preparing pleadings, Bills of Particular and letters and prolonging litigation, as a foundation for demanding and obtaining higher settlements. In return, the Medical Provider Defendants were rewarded with referrals and repeat

business.  Particularly, the defendants engaged in the Fraud Scheme because it had a reciprocal relationship that was mutually and financially beneficial to them all.

66. Based on such submission of fraudulent claim documents to the NY WCB, to the Gorayeb Defendants and others, payments and claim expenses were caused to be issued by mail and/or by ACH payment directly to the Medical Provider Defendants and expenses were incurred for which Plaintiff had to pay.

67. In order to prosecute the lawsuits filed on Claimant A's behalf, the Gorayeb Defendants had to receive all records and documentation generated by the Medical Provider defendants and those that were available to them, e.g. emergency room/urgent care records.  Notwithstanding the clear indications of Claimant A's staged accident, the Gorayeb Firm filed a lawsuit and continues to prosecute it.  Specifically, the Gorayeb Defendants  provided by mail or by electronic service to the New York State Supreme Court for the County of New York and to all named parties in the personal injury lawsuit, fraudulent medical records, including fraudulent documents prepared by or on behalf of the Medical Provider Defendants, containing false assertions regarding Claimant A's construction accident, the existence of and the extent of Claimant A's injuries, and the necessity of medical treatment that Claimant A received in connection with the alleged construction accident, in order to falsely bolster and add value to Claimant A's personal injury lawsuit, thereby inflating settlement value and ultimately, the Gorayeb Defendants' financial gain from Claimant A's personal injury lawsuit.

68.   The Gorayeb Defendants provided by mail or by electronic service to defense counsel medical authorizations and HIPAA releases signed by Claimant A for the release of Claimant A's medical records that Gorayeb Defendants knew or reasonably should have

known were false and such documentation was a regular part of progressing the lawsuit through discovery.

    ii.    <u>Claimant B</u>

69. Claimant B was allegedly injured on July 1, 2019, when Claimant B fell approximately seven feet from a ladder while working on a construction project in Brooklyn, New York.

70. On the date of the alleged accident, Claimant B took it upon himself to take scrap pieces of aluminum to the top of a transfer box alone. This, however, is a two-person task. Claimant B knew this yet engaged in the activity anyway. He ascended the ladder into a section of the worksite where employees are not allowed by himself and then went back down without the proper support. Claimant B was the cause of his own accident, if such an accident even occurred.

71. Nonetheless, Claimant B retained the Gorayeb Firm, and the Gorayeb Defendants began directing the aggressive and unnecessary medical treatment of Claimant B. They filed a lawsuit, signed and verified by Defendant Christopher Gorayeb himself, on Claimant B's behalf alleging personal injuries and damages stemming from negligence at the construction site. As demonstrated above, this accident did not occur or, it occurred because of the sole proximate cause of Claimant B, which is an exemption to liability under the New York Labor Law. Thus, the Summons and Complaint and other subsequent filings on behalf of Claimant B's attorney were filed falsely claiming allegations against defendants who were insured by Plaintiff herein.

72. Following the alleged accident, Claimant B went to the emergency room and claimed no injuries other than an alleged problem with his knee. He did not hit his head and had no spinal pain or injury. In fact, a CT scan of the cervical and lumbar spine were

normal with no acute injury.  Expectantly, Claimant B was treated and released from the emergency room on the same date that the alleged incident occurred without any significant finding of injury.

73. Following the alleged accident, Claimant B retained the Gorayeb Firm, and the Gorayeb Defendants began their direction of aggressive and unnecessary medical treatment of Claimant B and the prosecution of a general liability claim on behalf of Claimant B.  A lawsuit was filed on or about  June 24, 2020 and signed by Defendant Christopher Gorayeb himself two days prior.  The lawsuit alleged personal injuries and damages stemming from negligence at the construction site in violation of New York's Labor Law.  As demonstrated above, this accident did not occur thereby making the Summons and Complaint and other subsequent filings on behalf of Claimant B's attorney false.

74. Under the direction of the Gorayeb Defendants and in coordination with the Medical Provider Defendants, Claimant B then claimed low back pain and lumbar disc herniations and received a host of medical services from the Medical Provider Defendants, including imaging services, physical therapy, epidural steroid injections, epidurograms, EMG/NCV testing, lumbar trigger point injections and surgeries. Among other things, the Medical Provider Defendants, including but not limited to Dr. Merola, assessed Claimant B as having a severe traumatic low back injury and gross instability at L3-4 with an annular tear.  After one consultation with Dr. Merola, decompressive lumbar laminectomies at L3/L4/L5 were performed followed by extensive post-surgery physical therapy. Two years after the accident, Dr. Merola diagnosed Claimant B as being totally disabled from all work and duties.

75. Weinstein diagnosed Claimant B's alleged injuries and thereafter generated reports of the findings. Weinstein also referred Claimant B to Kaplan, Grimm, and NY Ortho for treatment based on the findings generated in Weinstein's report(s). Weinstein also referred Claimant B to Lenox Hill for medical imaging – i.e., an x-ray, a MRI (with and without contrast), and a CT scan.

76. Lenox Hill performed medical imaging of Claimant B's alleged injuries, including an MRI (with and without contrast), a CT scan, and an x-ray and thereafter generated reports of the findings.

77. Grimm diagnosed Claimant B's alleged injuries and thereafter generated reports of the findings. Grimm performed medical treatments and services on Claimant B for his alleged injuries. Grimm referred Claimant B to Lenox Hill for medical imaging. Grimm referred Claimant B to Merola for an evaluation.

78. Kaplan diagnosed Claimant B's alleged injuries and thereafter generated reports of the findings. Kaplan performed medical treatments and services on Claimant B for his alleged injuries.

79. Merola diagnosed Claimant B's alleged injuries and generated reports of the findings. Merola performed surgery on Claimant B for his alleged injuries and thereafter generated reports regarding Claimant B's post-surgery treatment and care.

80. The diagnoses and treatments by each of the Medical Provider Defendants is wholly contrary to the emergency room findings and the discrepancies in facts concerning Claimant B's purported accident and complaints. The Medical Provider Defendants had access to these records yet conducted a course of treatment and made diagnoses of casually related injuries, nonetheless.  Based upon the staged nature of the accident the

radiology reports could have at most shown only degenerative injuries.  The Medical Provider Defendants therefore knew or should have known from their review of imaging films that there was no evidence of acute injury to those bodily regions yet proceeded and documented injuries and treatment as if they were.

81. Based on Claimant B's medical and workers' compensation records, therefore, many of the medical services provided to Claimant B were unnecessary, excessive and unwarranted because they were not causally related to this alleged workplace accident that either did not occur or, at most, was self-inflicted by Claimant B for no other purpose than to seek insurance benefits.

82. As further evidence of this, Dr. Charla Fischer, M.D., performed an independent medical examination on April 11, 2023, where Claimant B's identity was verified, and Spanish translation was provided. Like the emergency room examination before her, Dr. Fischer's examination of Claimant B showed no evidence of an acute trauma of the lumbar spine after the accident.  The lumbar x-ray administered on July 1, 2019 described no acute trauma and the MRI of the lumbar spine taken on October 19, 2019 only showed a chronically degenerative broad-based central disc herniation at L4-5. The lumbar surgery Claimant B underwent therefore was not causally related to the alleged accident; yet each and every defendant herein submitted documentation to the New York State Worker's Compensation Board or New State Supreme Court as though the alleged accident had caused the lower back injury.  In reality, Claimant B only sustained, at most, a lumbar sprain in connection with this incident. However, Defendants pursued inflated claims and/or courses of a treatment, submitted

documentation regarding same and sought insurance benefits well in excess to what this claim was worth.

83. The Medical Provider Defendants, directly or indirectly through the Fogelgaren Firm, electronically transmitted fraudulent medical documents to the NY WCB for authorization and payment for medical services provided to Claimant B, which were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident, to the Gorayeb Firm knowing that providing what facially appeared as favorable and legitimate medical records would be used by the Gorayeb Firm in a variety of ways, including, but not limited to, preparing pleadings, Bills of Particular and letters and prolonging litigation, as a foundation for demanding and obtaining higher settlements.  In return, the Medical Provider Defendants were rewarded with referrals and repeat business.  Particularly, the defendants engaged in the Fraud Scheme because it had a reciprocal relationship that was mutually and financially beneficial to them all.

84. Based on such submission of fraudulent claim documents to the NY WCB, to the Gorayeb Defendants and others, payments and claim expenses were issued by mail and/or by ACH payment directly to the Medical Provider Defendants and others and expenses were incurred for which Plaintiff had to pay.

85. In order to prosecute the lawsuits filed on Claimant B's behalf, the Gorayeb Defendants had to receive all records and documentation generated by the Medical Provider defendants and those that were available to them, e.g. emergency room/urgent care records.  Notwithstanding the clear indications of Claimant B's staged accident, the Gorayeb Firm filed a lawsuit and continues to prosecute it.  Specifically, the Gorayeb

Defendants provided by mail or by electronic service to the New York State Supreme Court for the County of New York and to all named parties in the personal injury lawsuit, fraudulent medical records, including fraudulent documents prepared by or on behalf of the Medical Provider Defendants, containing false assertions regarding Claimant B's construction accident, the existence of and the extent of Claimant B's injuries, and the necessity of medical treatment that Claimant B received in connection with the alleged construction accident, in order to falsely bolster and add value to Claimant B's personal injury lawsuit, thereby inflating settlement value and ultimately, the Gorayeb Defendants' financial gain from Claimant B's personal injury lawsuit.

86. The Gorayeb Defendants provided by mail or by electronic service to defense counsel medical authorizations and HIPAA releases signed by Claimant B for the release of Claimant B's medical records that Gorayeb Defendants knew or reasonably should have known were false and such documentation was a regular part of progressing the lawsuit through discovery.

iii.    <u>Claimant C</u>

87. Claimant C was allegedly injured on July 7, 2022, while working on scaffolding at a construction jobsite in New York.

88. Claimant C, however, does not even know how the alleged accident happened, as he gave multiple inconsistent histories of it. In one rendition, he was suspended by a rope using his right arm. In another, he was jumping over a balcony while holding onto said rope. In yet another, he was tripping and about to fall when he hyperextended his right upper extremity. Finally, in a verified complaint, Claimant C alleged that he fell from a scaffold.

89. A co-worker witnessed Claimant C intentionally jump from the scaffold to the balcony. Claimant C was securely positioned in a permissible safety harness but was caught by the lifeline due to having the grab rope connected too high. He did not adjust the rope properly to give himself enough slack before jumping. Contrary to claiming an accident and related injuries, Claimant C continued working without issue the rest of the day. He returned to work the next day and worked the full day. He made nominal complaints of shoulder pain both days.

90. Claimant C did not fall, and nothing fell on Claimant C to injure him as alleged in this accident. Claimant C did not seek any medical treatment immediately following the alleged accident nor the day after when he returned to work. Claimant C first sought treatment at Summit CityMD just two (2) weeks after the alleged accident, on July 18, 2022. Even then, Claimant C complained only of a right shoulder strain. He was in no objectively apparent distress or pain as his pulse and blood pressure were in normal ranges. He showed no extremity numbness or weakness, nor was his right shoulder range of motion limited. He reported at this visit an accident date of July 11, 2022, rather than the original July 7, 2022, date. He was cleared to return to work on July 22, 2022, 4 days after he was seen by Summit CityMD.

91. Nevertheless, Claimant C already had an appointment with an orthopedic surgeon scheduled for the next day, made for him by the Gorayeb Firm. Importantly, an x-ray of the right shoulder, the location of Claimant C's only complaint, came back completely normal at Summit CityMD. The right clavicle, right shoulder and right upper arm all showed no swelling or bruising, which 11 days post-injury should have been readily visible had he sustained an acute injury. Although Claimant C did not

complain about his right hand, Summit CityMD made a routine observation during its evaluation and noted that the right digits showed no signs of swelling, bruising, lacerations, or any other signs of injury. Despite the nominal complaints, work clearance, and negative X-ray, Summit CityMD diagnosed an unspecified rotator cuff tear or rupture of the right shoulder, *not specified as traumatic*. CityMD gave Claimant C a prescription for naproxen (a mild NSAID) 500 mg tablets twice per day and a healthy lifestyle. CityMD recommended Claimant C for light work duty for 3 days, then they fully cleared him for work.

92. Nevertheless, only 10 days after the alleged accident, but <u>after</u> CityMD had cleared Claimant C to return to work, the Fogelgaren firm filed a New York Worker's Compensation C-3 Form alleging a worksite injury to Claimant C resulting in injuries to his "[n]eck, [r]ight shoulder, back, right hip, right elbow, right wrist, ribs, right hand."

93. Furthermore, following the alleged accident, Claimant C retained the Gorayeb Firm, and the Gorayeb Defendants began their direction of aggressive and unnecessary medical treatment of Claimant C and the prosecution of a general liability claim on behalf of Claimant C.  A lawsuit was filed on or about August 17, 2022 and signed and verified by Defendant Christopher Gorayeb himself three days prior.  The lawsuit alleged personal injuries and damages stemming from negligence at the construction site. As demonstrated above, however, this accident did not occur, or did not occur as alleged, thereby making the Summons and Complaint and other subsequent filings on behalf of Claimant C's attorneys false.

94. Only after Claimant C retained the Gorayeb Defendants, who placed him in the care of the Medical Provider Defendants, what started out as only a complaint of minor right shoulder pain with no objective findings of acute injury coupled with unremarkable diagnostic testing became much more serious. The Gorayeb Defendants referred Claimant C to Dr. Jeffrey Kaplan, an orthopedic surgeon, before CityMD found no objective injury to Claimant C's shoulder. Dr. Kaplan first saw Claimant C on July 19, 2022, the day after CityMD had cleared Claimant C to return to work. Dr. Kaplan diagnosed Claimant C with internal derangement of the right shoulder with a tear of the supraspinatus tendon, necessitating surgery. Dr. Kaplan, who had access to CityMD's medical records and x-rays, allegedly found right wrist pain, positive impingement of the right shoulder, and tenderness in the wrist and right shoulder. He performed a right shoulder arthroscopy with rotator cuff repair despite any objective evidence of such a tear. He also diagnosed internal derangement of the right wrist with a tear of the scapholunate ligament. He prescribed home exercises for Claimant C and found him 30% disabled. Further, Dr. Kaplan allegedly found and reported Claimant C suffered back injuries with disc herniations causally connected to the alleged accident, which resulted in Dr. Kaplan prescribing a series of epidural steroid injections and making spinal surgical recommendations. Claimant C sought additional treatment from another provider for his right hand notwithstanding the lack of any trauma to same being reported or observed by Summit CityMD.

95. Dr. Kaplan referred Claimant C to Defendant Kolb Radiology, who performed an MRI of Plaintiff C's upper and lumber spine on October 23, 2023. Despite zero prior evidence of any traumatic injury, Kolb diagnosed injuries to Claimant C's cervical

spine, right shoulder, and right elbow, which led to Dr. Kaplan performing lumbar epidural steroid injections on Claimant C's L4-L5, L5-S1, and C7-T1. Dr. Kaplan also referred Claimant C to physical therapy for heat, massage, stretching, progressive strengthening, and range of motion activities. Dr. Kaplan claimed that Claimant C's "injuries" were causally related to the non-existent worksite accident, because of which Dr. Kaplan diagnosed Claimant C as 100% impaired as of 11/17/2023, despite CityMD finding no evidence of injury as of July 18, 2022, only 4 months earlier.

96. Kolb Radiology also purported to diagnose via MRI disc herniations and bulges at L5-S1, L4-L5, L3-L4, L2-L3, and L1-L2. At no time had Claimant C complained of back pain resulting from the alleged worksite accident. Kolb also claimed to have found evidence of right elbow tears of the lateral ulnar collateral ligament and radial collateral ligament or Claimant C's right elbow. It is evident that the Medical Provider Defendants were or should have been aware that Claimant C was uninjured but nevertheless made diagnoses and treatments that were false, without objective foundation, never complained of by Claimant C, and unrelated to the alleged worksite accident.

97. After the false findings and treatments by the Medical Provider Defendants, Claimant alleged through the Gorayeb Firm both in a lawsuit in New York state court and in his Worker's compensation case that he had "fallen from a scaffold" and injured his right shoulder and wrist when he caught himself.

98. Based on Claimant C's medical and workers' compensation records, the medical services provided to Claimant C were unnecessary, excessive, and unwarranted because they were not causally related to this alleged workplace accident that either did

not occur or, at most, was self-inflicted by Claimant C for no other purpose than to seek insurance benefits.  As further evidence of this, Dr. Saran S. Rosner, M.D., P.C., conducted an independent medical examination performed in the course of the lawsuit by Claimant C, attended by an employee of the Gorayeb Defendants, and found that Claimant C did not have actual symptoms or signs which referred to his neck, nor did he have any evidence of nerve root injury.  No lumbar complaints by Claimant C were documented during several examinations by several different care providers, and the disc herniations shown on Claimant C's diagnostic testing were of uncertain cause, age, and consequence, and if real, cannot be assigned to the accident of record with any degree of reasonable medical certainty. Further, Dr. Rosner did not find evidence of spinal injury, radiculopathy, or myelopathy.

99.  Moreover, a physical examination of Claimant C was also performed by Dr. Ramesh Gidumal, M.D., on October 18, 2023. Dr. Gidumal reviewed Claimant C's medical records, Verified and Supplemental Bill of Particulars (prepared and verified by the Gorayeb Defendants and signed by Christopher J. Gorayeb), and EBT transcript of Claimant C. Dr. Gidumal noted that Claimant C was not seen by any medical provider for almost two weeks following the alleged incident. There is no medical evidence that Claimant C sustained any significant or permanent injury to his right hand/wrist, right elbow, right shoulder, or cervical or lumbar spine because of the alleged accident. He noted that Claimant C could work full-time with no restrictions in any occupation of his choice and will not be impaired by the events of July 7, 2022.

100.   Based on Claimant C's medical and workers' compensation records, many of the medical services provided to Claimant C, and specifically those rendered by each and

every Medical Services Defendant herein, were unnecessary, excessive and/or unwarranted because the injuries were either degenerative in nature (yet not reported as such) or did not exist in the first instance because the accident was staged and, thus, not causally related to this alleged accident.  Yet, the Medical Services Defendants submitted documentation to the New York State Workers' Compensation Board as if these injuries were causally connected and the Legal Services Defendants pursued claims on the same basis

101.    Further, each Medical Provider Defendant, directly or indirectly through the Fogelgaren Firm, electronically transmitted medical documents to the NY WCB for authorization and payment for medical services provided to Claimant C, which were fraudulent for reasons set forth above.  They also transmitted the same false documents to the Gorayeb Firm knowing that providing what facially appeared as favorable and legitimate medical records would be used by the Gorayeb Firm in a variety of ways, including, but not limited to, preparing pleadings, Bills of Particular and letters and prolonging litigation, as a foundation for demanding and obtaining higher settlements. In return, the Medical Provider Defendants were rewarded with referrals and repeat business.  Particularly, the defendants engaged in the Fraud Scheme because it had a reciprocal relationship that was mutually and financially beneficial to them all.

102.    Based on such submission of fraudulent claim documents to the NY WCB, to the Gorayeb Defendants and others, payments and claim expenses were issued by mail and/or by ACH payment by Plaintiff directly to the Medical Provider Defendants and expenses were incurred on behalf of Claimant C for which Plaintiff had to pay.

103.   In order to prosecute the lawsuits filed on Claimant C's behalf, the Gorayeb Defendants had to receive all records and documentation generated by the Medical Provider defendants and those that were available to them, e.g. emergency room/urgent care records.  Notwithstanding the clear indications of Claimant C's staged accident, the Gorayeb Firm filed a lawsuit and continues to prosecute it.  Specifically, the Gorayeb Defendants provided by mail or by electronic service to the New York State Supreme Court for the Court of New York and to all named parties in the personal injury lawsuit fraudulent medical records, including the fraudulent documents prepared by or on behalf of the Medical Provider Defendants, containing false assertions regarding Claimant C's construction accident, the existence of and the extent of Claimant C's injuries, and the necessity of medical treatment that Claimant C received allegedly in connection with the construction accident, in order to falsely bolster and add value to Claimant C's personal injury lawsuit, thereby inflating settlement value and ultimately, the Gorayeb Defendants' financial gain from Claimant C's personal injury lawsuit.

104.   The Gorayeb Defendants provided by mail or by electronic service to defense counsel medical authorizations and HIPAA releases signed by Claimant C for the release of Claimant C's medical records that Gorayeb Defendants knew or reasonably should have known were false and such documentation was a regular part of progressing the lawsuit through discovery.

   iv.    <u>Claimant D</u>

105.   Claimant D, who is an immediate relative of Claimant A herein, was allegedly injured on July 19, 2022, when he fell while coming down a ladder at a construction

site in Brooklyn, New York. The construction project is the same one where Claimant A was allegedly injured as demonstrated above.

106.    Although Claimant D alleges he fell off a ladder, a co-worker working alongside Claimant D that day observed no such thing. Rather, Claimant D was observed sitting in a corner right next to the subject 12-foot extension ladder, which was in the same position it had been all day even after Claimant D's alleged fall. There was nothing wrong with the ladder, the ladder was upright, not broken, and the ladder did not have any debris, liquid or other foreign substance on any of its rungs.

107.    Further, the area of the ladder had no debris, materials, or anything else unusual around the ladder. The same ladder had been used several times on the date of the alleged accident without issue and that ladder was free from defects and did not break, shake, move or slide when it was used.

108.    Following the alleged accident, Claimant D presented to an emergency room where he stated that he had sustained a shoulder injury to his left side after slipping and falling three (3) feet from the subject ladder. Claimant D did not report any head injury, and a CT of the cervical and lumbar spine were both normal, showing no acute injuries. The emergency records specifically noted the low fall, even and unlabored respirations were notated, and no acute signs or symptoms of distress were found. All x-rays were normal as well. Expectantly, Claimant D was treated and released without any significant injuries.

109.    Following the alleged accident, Claimant D retained the Gorayeb Firm, and the Gorayeb Defendants began its direction of aggressive and unnecessary medical treatment of Claimant D and the prosecution of a general liability claim on behalf of

Claimant D.  A lawsuit was filed on or about August 9, 2022 and signed and verified by Defendant Christopher Gorayeb himself one day prior.  The lawsuit alleged personal injuries and damages stemming from negligence at the construction site in violation of New York's Labor Law.  As demonstrated above, however, this accident did not occur thereby making the Summons and Complaint and other subsequent filings on behalf of Claimant D's attorney false.

110.    The C3 for Claimant D, used to initiated his workers' compensation claim, was dated July 26, 2022, and indicated that the Claimant D was being treated by Defendants Weinstein, Kaplan and Grimm yet Claimant D had not been seen by such defendants at the time.  Rather, Claimant D first saw Defendant Weinstein on or about August 3, 2022 and referred Claimant D to Drs. Kaplan and Grimm.  Drs. Kaplan and Grimm first saw Claimant D on or about August 12, 2022.

111.    Following the retention of the Gorayeb Defendants, Claimant D sought additional medical treatment where he then had several additional complaints not mentioned at the emergency room, including but not limited to upper and lower neck, upper back, mid back, lower back, bilateral shoulder pain, and bilateral knee pain.  Specifically, Claimant D received treatment on August 8, 2022, the same day his Summons and Complaint was signed and verified by Defendant Christopher Gorayeb.  During that treatment, not only did Claimant D expand his complaints of injury, he also modified his version of the alleged accident to include that his fall was now approximately six to eight feet (up from the three feet he reported at the emergency room).

112.    Under the direction of Gorayeb Defendants and the care of the Medical Provider Defendants, what clearly started out as a chief complaint of only a shoulder injury to

the left side with normal objective findings and unremarkable diagnostic testing, later became a diagnosis of a back injury, with disc herniations, followed by an anterior cervical discectomy with fusion at C4-6 performed by Dr. Weinstein and post-surgical care from, among others, the NY Ortho Defendants. As the accident did not occur, or did not occur as presented, none of the diagnoses, treatments or disability ratings could exist; yet all were articulated, documented and relied upon only after Claimant D retained the Gorayeb Defendants and Medical Provider Defendants.

113.    Based on Claimant D's medical and workers' compensation records, many of the medical services provided to Claimant D were unnecessary, excessive and unwarranted and were not causally related to the alleged workplace accident. Specifically, Claimant D's injuries were degenerative in nature, pre-existing and/or did not exist at all because the accident was staged as reflected hereinabove. Yet, the Medical Services Defendants submitted documentation to the New York State Workers' Compensation Board as if these injuries were causally connected and the Legal Services Defendants pursued claims on the same basis.

114.    As further evidence of this, an independent medical examination performed by Dr. V. Christopher Inzerillo, M.D., MBA, showed Claimant D to have at most a mild partial (25%) temporary orthopedic causally related "disability" and that Claimant D was capable of working with restriction to be placed on no lifting more than 20 lbs., which is a far cry from the alleged total disability assessed by the Medical Provider Defendants, including Dr. Jeffrey Kaplan, MD.

115.    Each Medical Provider Defendant, directly or indirectly through the Fogelgaren Firm, electronically transmitted medical documents to the NY WCB for authorization

and payment for medical services provided to Claimant D, which were fraudulent for reasons set forth above. They also transmitted the same false documents to the Gorayeb Firm knowing that providing what facially appeared as favorable and legitimate medical records would be used by the Gorayeb Firm in a variety of ways, including, but not limited to, preparing pleadings, Bills of Particular and letters and prolonging litigation, as a foundation for demanding and obtaining higher settlements. In return, the Medical Provider Defendants were rewarded with referrals and repeat business. Particularly, the defendants engaged in the Fraud Scheme because it had a reciprocal relationship that was mutually and financially beneficial to them all.

116.    Based on such submission of fraudulent claim documents to the NY WCB, to the Gorayeb Defendants and others, payments and claim expenses were issued by mail and/or by ACH payment directly to the Medical Provider Defendants and expenses were incurred for which Plaintiff had to pay.

117.    In order to prosecute the lawsuits filed on Claimant D's behalf, the Gorayeb Defendants had to receive all records and documentation generated by the Medical Provider defendants and those that were available to them, e.g. emergency room/urgent care records. Notwithstanding the clear indications of Claimant D's staged accident, the Gorayeb Firm filed a lawsuit and continues to prosecute it. Specifically, the Gorayeb Defendants provided by mail or by electronic service to the New York State Supreme Court for the County of New York and to all named parties in the personal injury lawsuit, fraudulent medical records, including fraudulent documents prepared by or on behalf of the Medical Provider Defendants, containing false assertions regarding Claimant D's construction accident, the existence of and the extent of

Claimant D's injuries, and the necessity of medical treatment that Claimant D received in connection with the alleged construction accident, in order to falsely bolster and add value to Claimant D's personal injury lawsuit, thereby inflating settlement value and ultimately, the Gorayeb Defendants' financial gain from Claimant D's personal injury lawsuit.

118.    The Gorayeb Defendants provided by mail or by electronic service to defense counsel medical authorizations and HIPAA releases signed by Claimant D for the release of Claimant A's medical records that Gorayeb Defendants knew or reasonably should have known were false and such documentation was a regular part of progressing the lawsuit through discovery.

**C.    Defendants' Participation in the Fraud Scheme**

119.    At all relevant times, the Defendants constituted an association-in-fact enterprise and were engaged in, and the activities of which affected, interstate commerce, and each of the Defendants participated in the operation or management of the enterprise.

i.    Gorayeb Defendants' Participation in the Fraud Scheme

120.    Since at least 2018, the Gorayeb Firm has been involved in hundreds of lawsuits involving purported construction work injuries, covered by various insurers and reinsurers, including Plaintiff Ionian in furtherance of the Fraud Scheme.

121.    Defendant Gorayeb is the sole shareholder and principal of the Gorayeb Firm.

122.    At all times relevant, Gorayeb Defendants sponsored, directed, authorized, coordinated, and controlled the conduct engaged in by the Runners to give OSHA training to construction workers and to recruit construction workers (*i.e.*, Claimants) to stage workplace accidents and/or falsely claim injuries unrelated to the alleged accidents.

123.     At all relevant times, Gorayeb Defendants represented Claimants in personal injury lawsuits and directed, authorized, coordinated, and controlled the prosecution of Claimants' lawsuits, assigning duties and responsibilities to attorneys/employees of the Gorayeb Firm, and intentionally submitting or causing the filing of and submission of fraudulent assertions and medical documentation to various courts within the State of New York and all named parties in the personal injury lawsuit.

124.     As part of the Fraud Scheme, the Gorayeb Defendants referred the Claimants to the Fogelgaren Firm for representation and prosecution of the Claimants' workers' compensation claims.

125.     As demonstrated herein above, Gorayeb Defendants directed the Claimants to seek medical treatment from the Medical Provider Defendants, knowing and understanding that the Medical Provider Defendants would provide fraudulent medical documentation needed for higher settlement values in exchange for continuing to funnel patients to the Medical Provider Defendants.

126.     Each of Gorayeb Defendants knowingly transmitted and received by mail, facsimile, and/or email documents that contained assertions of legitimate construction accidents, the existence of injuries, and the necessity of medical treatment that Gorayeb Defendants knew or reasonably should have known were false. This was evidenced by the filing of a Summons and Complaint, Bills of Particulars and other papers that were filed through the New York State Court Electronic Filing system or transmitted to interested parties that falsely attested to the construction accidents, the existence and/or the extent of Claimant injuries, and the necessity for claimant's medical treatment.

127.    This unlawful conduct worked to falsely bolster and add value to Claimants' workers' compensation claims and personal injury lawsuits, thereby inflating settlement value and ultimately, Gorayeb Defendants' financial gain from the lawsuits.

ii.    NY Ortho Defendants' Participation in the Fraud Scheme

128.    Since at least 2018, the NY Ortho has been involved in the medical treatment of numerous Claimants involving purported construction work injuries in furtherance of the Fraud Scheme.

129.    Defendant Kaplan, as an orthopedic surgeon, and a principal of NY Ortho, controlled and directed the medical services provided to Claimants by NY Ortho, including a) evaluating and performing surgeries that were not medically necessary and/or not causally related to the alleged accidents; b) referring Claimants to his colleague, Dr. Grimm, also of NY Ortho, for unnecessary injections and physical therapy; and c) referring Claimants to the Lenox Practice and Kolb Defendants for unnecessary imaging services. The facts of the accident, emergency room records and Independent Medical Examinations confirm that there were numerous unnecessary treatments and medical services provided to Claimants for either injuries that did not exist or were degenerative in nature and not causally related to the alleged accident.

130.    Defendant Grimm, as a physician specializing in physical medicine and rehabilitation and pain management, and upon information and belief, a principal of NY Ortho, controlled and directed the medical services provided to Claimants by NY Ortho, including a) evaluating and providing injections that were not medically necessary and/or not causally related to the alleged accidents; b) referring Claimants to his colleague, Dr. Kaplan, for unnecessary physical therapy; c) referring Claimants to

Dr. Merola for unnecessary evaluations and surgeries; and d) referring Claimants to the Lenox Practice and Kolb Defendants for unnecessary imaging services.

131.    As part of the Fraud Scheme, Kaplan and Grimm intentionally submitted or caused the submission of fraudulent medical documentation by mail, facsimile and/or email to the NY WCB and others involved in the Claimants' workers' compensation claims for authorization and to seek reimbursement for medical services that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident.

132.    As part of the Fraud Scheme, Kaplan and Grimm provided fraudulent medical documentation by mail, facsimile and/or email to other medical service providers, including the Medical Provider Defendants, knowing that the fraudulent medical documentation would be used or relied upon to render additional medical services that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident.

133.    As part of the Fraud Scheme, Kaplan and Grimm provided fraudulent medical documentation by mail, facsimile and/or email to Gorayeb Defendants knowing that the fraudulent medical documentation would be used to falsely bolster and add value to Claimants' personal injury lawsuits, thereby inflating the settlement value of such lawsuits.

134.    The NY Ortho Defendants knowingly profited from reimbursements for the alleged medical and diagnostic services rendered by Kaplan and Grimm, that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident but were rendered in furtherance of the Fraud Scheme.

135.    The NY Ortho Defendants also knowingly profited from the increased number of patients who were referred to them as part of the Fraud Scheme, for whom Kaplan and Grimm provided medical and diagnostic services and received reimbursement for such services.

iii.    Kolb Defendants' Participation in the Fraud Scheme

136.    Since 2018, Kolb Practice has been involved in the medical treatment of numerous Claimants involving purported construction work injuries in furtherance of the Fraud Scheme.

137.    Kolb, as a radiologist and a principal of Kolb Practice, controlled and directed the medical services provided to Claimants by providing radiological and imaging diagnostics and MRI reports identifying purported positive findings without correlation to degenerative conditions and providing inaccurate findings of the Claimants' conditions. Independent Medical Examinations confirm that there were numerous unnecessary treatments and medical services provided to Claimants for either injuries that did not exist or were degenerative in nature and not causally related to the alleged accident.

138.    As part of the Fraud Scheme, Kolb intentionally submitted or caused the submission of fraudulent medical documentation by mail, facsimile and/or email to the NY WCB and others involved in the Claimants' workers' compensation claims for authorization and to seek reimbursement for medical services that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident.

139.    As part of the Fraud Scheme, Kolb provided fraudulent medical documentation by mail, facsimile and/or email to other medical service providers, including the Medical

Provider Defendants, knowing that the fraudulent medical documentation would be used or relied upon to render additional medical services that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident.

140.    As part of the Fraud Scheme, Kolb provided fraudulent medical documentation by mail, facsimile and/or email to Gorayeb Defendants knowing that the fraudulent medical documentation would be used to falsely bolster and add value to Claimants' personal injury lawsuits, thereby inflating the settlement value of such lawsuits.

141.    The Kolb Defendants knowingly profited from reimbursements for the alleged imaging and diagnostic services rendered by Kolb, that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident but were rendered in furtherance of the Fraud Scheme.

142.    The Kolb Defendants also knowingly profited from the increased number of patients who were referred to them as part of the Fraud Scheme, for whom Kolb provided imaging and diagnostic services and received reimbursement for such services.

iv.    Lenox Practice Participation in the Fraud Scheme

143.    Since 2018, the Lenox Practice has been involved in the medical treatment of numerous Claimants involving purported construction work injuries in furtherance of the Fraud Scheme.

144.    The Lenox Practice, as radiologists, controlled and directed the medical services provided to Claimants by providing radiological and imaging diagnostics and MRI reports identifying purported positive findings without correlation to degenerative conditions and providing inaccurate findings of the Claimants' conditions.

145.     As part of the Fraud Scheme, the Lenox Practice intentionally submitted or caused the submission of fraudulent medical documentation by mail, facsimile and/or email to the NY WCB and others involved in the Claimants' workers' compensation claims for authorization and to seek reimbursement for medical services that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident.

146.     As part of the Fraud Scheme, the Lenox Practice provided fraudulent medical documentation by mail, facsimile and/or email to other medical service providers, including the Medical Provider Defendants, knowing that the fraudulent medical documentation would be used or relied upon to render additional medical services that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident.

147.     As part of the Fraud Scheme, the Lenox Practice provided fraudulent medical documentation by mail, facsimile and/or email to Gorayeb Defendants knowing that the fraudulent medical documentation would be used to falsely bolster and add value to Claimants' personal injury lawsuits, thereby inflating the settlement value of such lawsuits. Independent Medical Examinations confirm that there were numerous unnecessary treatments and medical services provided to Claimants for either injuries that did not exist or were degenerative in nature and not causally related to the alleged accident.

148.     The Lenox Practice knowingly profited from reimbursements for the alleged imaging and diagnostic services rendered by the Lenox Practice, that were unnecessary,

excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident but were rendered in furtherance of the Fraud Scheme.

149.    The Lenox Practice also knowingly profited from the increased number of patients who were referred to them as part of the Fraud Scheme, for whom they provided imaging and diagnostic services and received reimbursement for such services.

v.    Weinstein Defendants' Participation in the Fraud Scheme

150.    Since 2018, the Weinstein Practice has been involved in the medical treatment of numerous Claimants involving purported construction work injuries in furtherance of the Fraud Scheme.

151.    Weinstein, as an orthopedic surgeon and a principal of the Weinstein Practice, controlled and directed the medical services provided to Claimants by the Weinstein Practice, including evaluating and performing surgeries that were not medically necessary and/or not causally related to the alleged accidents.

152.    As part of the Fraud Scheme, Weinstein intentionally submitted or caused the submission of fraudulent medical documentation by mail, facsimile and/or email to the NY WCB and others involved in the Claimants' workers' compensation claims for authorization and to seek reimbursement for medical services that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident.

153.    As part of the Fraud Scheme, Weinstein provided fraudulent medical documentation by mail, facsimile and/or email to other medical service providers, including the Medical Provider Defendants, knowing that the fraudulent medical documentation would be used or relied upon to render additional medical services that were unnecessary, excessive, unwarranted and/or costly and were not causally related

to the alleged workplace accident. Independent Medical Examinations confirm that there were numerous unnecessary treatments and medical services provided to Claimants for either injuries that did not exist or were degenerative in nature and not causally related to the alleged accident.

154.    As part of the Fraud Scheme, Weinstein provided fraudulent medical documentation by mail, facsimile and/or email to Gorayeb Defendants knowing that the fraudulent medical documentation would be used to falsely bolster and add value to Claimants' personal injury lawsuits, thereby inflating the settlement value of such lawsuits.

155.    The Weinstein Defendants knowingly profited from reimbursements for the alleged medical and diagnostic services rendered by Weinstein, that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident but were rendered in furtherance of the Fraud Scheme.

156.    The Weinstein Defendants also knowingly profited from the increased number of patients who were referred to them as part of the Fraud Scheme, for whom Weinstein provided medical and diagnostic services and received reimbursement for such services.

vi.    Merola's Participation in the Fraud Scheme

157.    Since 2018, Merola has been involved in the medical treatment of numerous Claimants involving purported construction work injuries in furtherance of the Fraud Scheme.

158.    Merola, as an orthopedic surgeon, controlled and directed the medical services provided to Claimants, including evaluating and performing surgeries that were not medically necessary and/or not causally related to the alleged accidents.

159.    As part of the Fraud Scheme, Merola intentionally submitted or caused the submission of fraudulent medical documentation by mail, facsimile and/or email to the NY WCB and others involved in the Claimants' workers' compensation claims for authorization and to seek reimbursement for medical services that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident. Independent Medical Examinations confirm that there were numerous unnecessary treatments and medical services provided to Claimants for either injuries that did not exist or were degenerative in nature and not causally related to the alleged accident.

160.    As part of the Fraud Scheme, Merola provided fraudulent medical documentation by mail, facsimile and/or email to other medical service providers, including the Medical Provider Defendants, knowing that the fraudulent medical documentation would be used or relied upon to render additional medical services that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident.

161.    As part of the Fraud Scheme, Merola provided fraudulent medical documentation by mail, facsimile and/or email to Gorayeb Defendants knowing that the fraudulent medical documentation would be used to falsely bolster and add value to Claimants' personal injury lawsuits, thereby inflating the settlement value of such lawsuits.

162.    Merola knowingly profited from reimbursements for the alleged medical and diagnostic services that he rendered, that were unnecessary, excessive, unwarranted and/or costly and were not causally related to the alleged workplace accident but were rendered in furtherance of the Fraud Scheme.

163.    Merola also knowingly profited from the increased number of patients who were referred to him as part of the Fraud Scheme, for whom he provided medical and diagnostic services and received reimbursement for such services.

**D.    Defendants' Pattern of Racketeering Activity**

164.    The pattern of racketeering engaged in by each Defendant herein in furtherance of the Fraud Scheme began on or before 2018 and continues to the present day. Based upon the nature of each defendants' business, it is a regular part of their business to provide services related to insurance claims. Specifically, the Legal Services Defendants provide legal representation and pursue workers' compensation claims and general liability claims on behalf of clients. The Medical Provider Defendants provide medical services to those same clients and receive compensation through the claims initiated by the Legal Services defendants. All defendants frequently receive new clients and pursue new claims where the Fraud Scheme is employed. As such, the defendants' conduct will continue into the future unless stopped. Specific examples of racketeering activity designed to perpetuate the Fraud Scheme is it relates to the within four representative claims are as follows:

**CLAIMANT A**

a. On or about February 2, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a Doctor's Progress Report along with a report dated January 7, 2021, concerning Claimant A's knee injection treatment. Such reports were submitted as if Claimant A's purported left knee, lower back, left shoulder and cervical radiculopathy injuries were casually connected to Claimant A's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant A's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to

obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

b.   On or about February 2, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a Doctor's Progress Report along with a report dated January 7, 2021, concerning Claimant A's knee injection treatment.  Such reports were submitted as if Claimant A's purported left knee, lower back, left shoulder and cervical radiculopathy injuries were casually connected to Claimant A's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant A's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

c.   On or about February 17, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a Doctor's Progress Report along with a report dated February 12, 2021, concerning Claimant A's knee injection treatment.  Such reports were submitted as if Claimant A's purported left knee, lower back, left shoulder and cervical radiculopathy injuries were casually connected to Claimant A's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant A's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

d.   On or about February 17, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a Doctor's Progress Report along with a report dated February 12, 2021, concerning Claimant A's knee injection treatment.  Such reports were submitted as if Claimant A's purported left knee, lower back, left shoulder and cervical radiculopathy injuries were casually connected to Claimant A's accident and that treatment for such was warranted and necessary.  These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant A's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary

nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

e.   On or about April 26, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a Doctor's Progress Report of his April 15, 2021, examination of Claimant A based on purported left knee, lower back, left shoulder and cervical radiculopathy injuries. Such reports were submitted as if Claimant A's purported left knee, lower back, left shoulder and cervical radiculopathy injuries were casually connected to Claimant A's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant A's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

f.   On or about April 26, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a Doctor's Progress Report of his April 15, 2021, examination of Claimant A based on purported left knee, lower back, left shoulder and cervical radiculopathy injuries. Such reports were submitted as if Claimant A's purported left knee, lower back, left shoulder and cervical radiculopathy injuries were casually connected to Claimant A's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant A's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

g.   On or about August 11, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to a signed authorization form which authorized the transmission of Workers' Compensation Board records to defense counsel. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant A's emergency room records. These records were available to NY Ortho and

based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident.  Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

h.   On or about September 1, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his January 21, 2021, left shoulder and left knee MRI of Claimant A based on purported left shoulder and left knee injuries. Such reports were submitted as if Claimant A's purported left shoulder and left knee injuries were casually connected to Claimant A's accident and that treatment for such was warranted and necessary.  These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant A's emergency room records. These records were available to Kolb and based on such records, Kolb knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident.  Notwithstanding the same, Kolb continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

i.   On or about September 1, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb Radiology caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his January 21, 2021, left shoulder and left knee MRI of Claimant A based on purported left shoulder and left knee injuries.  Such reports were submitted as if Claimant A's purported left shoulder  and left knee injuries were casually connected to Claimant A's accident and that treatment for such was warranted and necessary.  These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant A's emergency room records. These records were available to Kolb Radiology and based on such records, Kolb Radiology knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident.  Notwithstanding the same, Kolb Radiology continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

j.   On or about September 1, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his January 20, 2021, left cervical and lumbar spine MRIs of Claimant A based on purported spinal injuries.  Such reports were submitted as if Claimant A's purported cervical and lumbar spine injuries were casually connected to Claimant A's accident and that treatment for such was warranted and

necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant A's emergency room records. These records were available to Kolb and based on such records, Kolb knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kolb continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

k.  On or about September 1, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb Radiology caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his January 20, 2021, left cervical and lumbar spine MRIs of Claimant A based on purported spinal injuries.  Such reports were submitted as if Claimant A's purported cervical and lumbar spine injuries were casually connected to Claimant A's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant A's emergency room records. These records were available to Kolb Radiology and based on such records, Kolb Radiology knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident.  Notwithstanding the same, Kolb Radiology continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

## CLAIMANT B

l.  On or about June 24, 2020, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Gorayeb & Associates or an employee of the Gorayeb & Associates, P.C. caused to be transmitted by mail, facsimile or email a Summons and Verified Complaint, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant A's medical treatment.

m.  On or about June 24, 2020, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Christopher Gorayeb  caused to be transmitted by mail, facsimile or email a Summons and Verified Complaint, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant A's medical treatment.
ss.
tt.

n.  On or about January 29, 2020, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Lenox Hill Radiology caused to be transmitted by mail, facsimile or email to the NY WCB a Radiologist report of his October 19, 2019, right knee MRIs of Claimant B based on purported spinal injuries.  Such reports were submitted as if Claimant B's purported knee injuries were casually connected to Claimant B's accident and that

treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Lenox Hill Radiology and based on such records, Lenox Hill Radiology knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Lenox Hill Radiology continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

o.  On or about February 28, 2020, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his February 25, 2020, follow-up examination of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's purported injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

p.  On or about February 28, 2020, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his February 25, 2020, follow-up examination of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's purported injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

q.  On or about September 14, 2020, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Merola caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his August 10, 2020, examination of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's

purported injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Merola and based on such records, Merola knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Merola continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

r.    On or about October 19, 2020, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB an MG-2 Attending Doctor's Request for Approval of Variance and Insurer's Response of his October 5, 2020, request for approval for physical therapy for Claimant B based on purported injuries. Such reports were submitted as if Claimant B's purported injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

s.    On or about November 2, 2020, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Grimm caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his October 14, 2020, trigger point injection of the lumbar spine of Claimant B. based on purported injuries. Such reports were submitted as if Claimant B's lumbar spine injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Grimm and based on such records, Grimm knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Grimm continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

t.    On or about December 21, 2020, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Merola caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim Form of his December 16, 2020, decompressive

lumbar laminectomy of Claimant B. based on purported injuries. Such reports were submitted as if Claimant B's lumbar spine injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Merola and based on such records, Merola knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Merola continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

u. On or about January 5, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Grimm caused to be transmitted by mail, facsimile or email to the NY WCB a C-4 Doctor's Initial Report of his February 11, 2020, examination of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Grimm and based on such records, Grimm knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Grimm continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

v. On or about January 5, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his November 30, 2020, follow-up examination of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

w. On or about January 5, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his October 5, 2020, follow-up examination

of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

x.   On or about January 5, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his November 30, 2020, follow-up examination of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

y.   On or about January 5, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his October 5, 2020, follow-up examination of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

z.   On or about January 14, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Lenox Hill Radiology caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim Form of his January 3, 2020, MRI of

Claimant B based on purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Lenox Hill Radiology and based on such records, Lenox Hill Radiology knew or should have known that the treatments were neither necessary nor casually connected to the alleged accident. Notwithstanding the same, Lenox Hill Radiology continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

aa. On or about March 24, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his March 1, 2021, physical therapy session of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

bb. On or about March 24, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his March 1, 2021, physical therapy session of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

cc. On or about March 24, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his March 1, 2021, physical therapy session of Claimant B based on purported injuries. Such reports were submitted as if

Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

dd. On or about May 3, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Grimm caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his April 21, 2021, trigger point injection of the lumbar spine of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's lumbar spine injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Grimm and based on such records, Grimm knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Grimm continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

ee. On or about June 17, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Grimm caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his June 3, 2021, lumbar epidural steroid injection of the lumbar spine of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's lumbar spine injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Grimm and based on such records, Grimm knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Grimm continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

ff. On or about July 2, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Merola caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his June 28, 2021, follow-up examination of

Claimant B based on purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Merola and based on such records, Merola knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Merola continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

gg. On or about July 2, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Grimm caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his June 28, 2021, examination of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Grimm and based on such records, Grimm knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Grimm continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

hh. On or about July 12, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Merola caused to be transmitted by mail, facsimile or email to the NY WCB a C-4.2 Doctor's Progress Report of his June 28, 2021, examination of Claimant B based on purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Merola and based on such records, Merola knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Merola continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

ii. On or about July 15, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Christopher Gorayeb, caused to be transmitted by mail, facsimile or email a Verified Bill of Particulars, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant B's medical treatment.

jj. On or about July 15, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, or an employee of the Gorayeb & Associates, P.C., caused to be transmitted by mail, facsimile or email a Verified Bill of Particulars, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant B's medical treatment.

kk. On or about July 20, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the defense counsel a signed medical authorization form, which authorized the transmission of medical records from Kaplan to defense counsel of Claimant B's purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

ll. On or about July 20, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the defense counsel a signed medical authorization form, which authorized the transmission of medical records from NY Ortho to defense counsel of Claimant B's purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

mm. On or about July 22, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Christopher Gorayeb caused to be transmitted by mail, facsimile or email to the defense counsel a signed medical authorization form, which authorized the transmission of medical records to defense counsel of Claimant B's purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and

necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Christopher Gorayeb and based on such records, Christopher Gorayeb knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Christopher Gorayeb continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

nn. On or about July 22, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Gorayeb & Associates, P.C. caused to be transmitted by mail, facsimile or email to the defense counsel a signed medical authorization form, which authorized the transmission of medical records to defense counsel of Claimant B's purported injuries. Such reports were submitted as if Claimant B's injuries were casually connected to Claimant B's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant B's emergency room records. These records were available to Gorayeb & Associates and based on such records, Gorayeb & Associates knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Gorayeb & Associates continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

oo. On or about July 15, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Christopher Gorayeb, caused to be transmitted by mail, facsimile or email a Fourth Verified Bill of Particulars, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant B's medical treatment.

pp. On or about July 15, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Gorayeb & Associates or an employee of the Gorayeb & Associates, P.C., caused to be transmitted by mail, facsimile or email a Fourth Verified Bill of Particulars, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant B's medical treatment.

qq. On or about October 19, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Christopher Gorayeb, caused to be transmitted by mail, facsimile or email a Second Supplemental Verified Bill of Particulars, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant B's medical treatment.

rr. On or about October 19, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Gorayeb & Associates or an employee of the Gorayeb & Associates, P.C., caused to be transmitted by mail, facsimile or email a Second Supplemental Verified Bill of Particulars, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant B's medical treatment.

ss. On or about December 14, 2021, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Christopher Gorayeb, caused to be transmitted by mail, facsimile or email a Third Supplemental Verified Bill of Particulars, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant B's medical treatment.

tt. On or about December 14, 2021, in furtherance of the Fraud Scheme, and in violation of 18U.S.C. §§ 1341 or 1343, Gorayeb & Associates or an employee of the Gorayeb & Associates, P.C., caused to be transmitted by mail, facsimile or email a Third Supplemental Verified Bill of Particulars, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant B's medical treatment.

uu. On or about February 20, 2024, in furtherance of the Fraud Scheme, and in violation of 18U.S.C. §§ 1341 or 1343, Christopher Gorayeb, caused to be transmitted by mail, facsimile or email a Verified Bill of Particulars, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant B's medical treatment.

vv. On or about February 20, 2024, in furtherance of the Fraud Scheme, and in violation of 18U.S.C. §§ 1341 or 1343, Gorayeb & Associates or an employee of the Gorayeb & Associates, P.C. , caused to be transmitted by mail, facsimile or email a Verified Bill of Particulars, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant B's medical treatment.

ww.     On or about June 20, 2024, in furtherance of the Fraud Scheme, and in violation of 18U.S.C. §§ 1341 or 1343, Christopher Gorayeb, caused to be transmitted by mail, facsimile or email a Fifth Verified Bill of Particulars, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant B's medical treatment.

xx. On or about June 20, 2024, in furtherance of the Fraud Scheme, and in violation of 18U.S.C. §§ 1341 or 1343, Gorayeb & Associates or an employee of the Gorayeb & Associates, P.C. , caused to be transmitted by mail, facsimile or email a Fifth Verified Bill of Particulars, falsely attesting to the construction accident, the existence and/or extent of Claimant B's injuries, and the necessity of Claimant B's medical treatment.

## CLAIMANT C

yy.    On or about August 17, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. § 1343, Christopher Gorayeb, electronically submitted and filed a Summons and Verified Complaint falsely attesting to the August 15, 2022 construction accident, the existence and/or extent of Claimant C's injuries, and the necessity of Claimant C's medical treatment.

zz.    On or about August 17, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. § 1343, Gorayeb & Associates or an employee of the Gorayeb & Associates, P.C., electronically submitted and filed a Summons and Verified Complaint falsely attesting to the August 15, 2022 construction accident, the existence and/or extent of Claimant C's injuries, and the necessity of Claimant C's medical treatment.

aaa.    On or about October 3, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB an examination report of his August 16, 2022, examination of Claimant C based on purported right shoulder, cervical radiculopathy and right wrist injuries. Such reports were submitted as if Claimant C's injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

bbb.    On or about October 3, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB an examination report of his August 16, 2022, examination of Claimant C based on purported right shoulder injuries, cervical radiculopathy and right wrist injuries. Such reports were submitted as if Claimant C's injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

ccc.        On or about August 16, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Gorayeb & Associates or an employee of the Gorayeb & Associates, P.C. caused to be transmitted by mail, facsimile or email to the NY WCB a signed authorization form, which authorized the transmission of Workers' Compensation Board records, of Claimant C, to be sent to NY Ortho, based on purported injuries. Such reports were submitted as if Claimant C's injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Gorayeb & Associates, P.C. and based on such records, Gorayeb & Associates, P.C. knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Gorayeb & Associates, P.C. continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

ddd.        On or about August 16, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Christopher Gorayeb caused to be transmitted by mail, facsimile or email to the NY WCB a signed authorization form, which authorized the transmission of Workers' Compensation Board records, of Claimant C, to be sent to NY Ortho, based on purported injuries. Such reports were submitted as if Claimant C's injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Christopher Gorayeb, and based on such records, Christopher Gorayeb knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Christopher Gorayeb continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

eee.        On or about October 3, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Grimm caused to be transmitted by mail, facsimile or email to the NY WCB an examination report of his September 20, 2022, examination of Claimant C based on purported right shoulder injuries, cervical radiculopathy and right wrist injuries. Such reports were submitted as if Claimant C's injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Grimm and based on such records, Grimm knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Grimm continued a course of treatment, prepared records reflecting same and thereafter

transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

fff.    On or about September 21, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Christopher Gorayeb caused to be transmitted by mail, facsimile or email to the NY WCB a signed authorization form, which authorized the transmission of Workers' Compensation Board records, of Claimant C, to be released to defense counsel, based on purported injuries. Such reports were submitted as if Claimant C's injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Christopher Gorayeb, and based on such records, Christopher Gorayeb knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Christopher Gorayeb continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

ggg.    On or about September 21, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Gorayeb & Associates or an employee of the Gorayeb & Associates, P.C. caused to be transmitted by mail, facsimile or email to the NY WCB a signed authorization form, which authorized the transmission of Workers' Compensation Board records, of Claimant C, to be released to defense counsel, based on purported injuries. Such reports were submitted as if Claimant C's injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Gorayeb & Associates, and based on such records, Gorayeb & Associates knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Gorayeb & Associates continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

hhh.    On or about September 23, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his September 6, 2022, cervical spine MRI of Claimant C based on purported cervical spine injuries. Such reports were submitted as if Claimant C's purported spine injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These

records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Kolb and based on such records, Kolb knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kolb continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

iii.      On or about September 23, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb Radiology caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his September 6, 2022, cervical spine MRI of Claimant C based on purported cervical spine injuries. Such reports were submitted as if Claimant C's purported spine injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary.  These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Kolb Radiology and based on such records, Kolb Radiology knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kolb Radiology continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

jjj.      On or about September 24, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his September 7, 2022, right elbow MRI of Claimant C based on right elbow injuries. Such reports were submitted as if Claimant C's purported right elbow injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary.  These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Kolb and based on such records, Kolb knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kolb continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

kkk.      On or about September 24, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb Radiology caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his

September 7,2022, right elbow MRI of Claimant C based on right elbow injuries. Such reports were submitted as if Claimant C's purported right elbow injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Kolb Radiology and based on such records, Kolb Radiology knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kolb Radiology continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance enefits they would otherwise not be entitled.

lll.         On or about October 26, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his October 5, 2022, lumbar spine MRI of Claimant C based on lumbar spine injuries. Such reports were submitted as if Claimant C's purported lumbar injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Kolb and based on such records, Kolb knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kolb continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

mmm.       On or about October 26, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb Radiology caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his October 5, 2022, lumbar spine MRI of Claimant C based on lumbar spine injuries. Such reports were   submitted as if Claimant C's purported lumbar injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Kolb Radiology and based on such records, Kolb Radiology knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kolb Radiology continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

nnn         On or about October 31, 2022, in furtherance of the Fraud Scheme, and in violation

of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a Provider's Attestation and Statement of Medical Necessity for physical therapy for Claimant C based on purported injuries. Such reports were submitted as if Claimant C's purported injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

ooo.     On or about October 31, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a Provider's Attestation and Statement of Medical Necessity for physical therapy for Claimant C based on purported injuries. Such reports were submitted as if Claimant C's purported injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

ppp.     On or about December 30, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Christopher Gorayeb caused to be transmitted by mail, facsimile or email to the NY WCB a signed authorization form, which authorized the transmission of Workers' Compensation Board records, of Claimant C, to be released to defense counsel, based on purported injuries. Such reports were submitted as if Claimant C's injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Christopher Gorayeb, and based on such records, Christopher Gorayeb knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Christopher Gorayeb continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services,

increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

qqq.    On or about December 30, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Gorayeb & Associates or an employee of the Gorayeb & Associates, P.C. caused to be transmitted by mail, facsimile or email to the NY WCB a signed authorization form, which authorized the transmission of Workers' Compensation Board records, of Claimant C, to be released to defense counsel, based on purported injuries. Such reports were submitted as if Claimant C's injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Gorayeb & Associates, and based on such records, Gorayeb & Associates knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Gorayeb & Associates continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

rrr.    On or about April 17, 2023 in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB an operative report of his March 22, 2023, rotator cuff repair, a subacromial decompression with bursectomy of subacromial and subdeltoid bursa and a glenohumeral synovectomy of Claimant C based on purported injuries. Such reports were submitted as if Claimant C's injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant C's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

sss.    On or about April 17, 2023 in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB an operative report of his March 22, 2023, rotator cuff repair, a subacromial decompression with bursectomy of subacromial and subdeltoid bursa and a glenohumeral synovectomy of Claimant C based on purported injuries. Such reports were submitted as if Claimant C's injuries were casually connected to Claimant C's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant

C's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

## CLAIMANT D

ttt.     On or about August 9, 2022, in furtherance of the Fraud Scheme, and in violation of 18U.S.C. §§ 1341 or 1343, Christopher Gorayeb, caused to be transmitted by mail, facsimile or email a Summons and Verified Complaint, falsely attesting to the construction accident, the existence and/or extent of Claimant D's injuries, and the necessity of Claimant D's medical treatment.

uuu.     On or about August 9, 2022, in furtherance of the Fraud Scheme, and in violation of 18U.S.C. §§ 1341 or 1343, Gorayeb & Associates or an employee of the Gorayeb & Associates, P.C., caused to be transmitted by mail, facsimile or email a Summons and Verified Complaint, falsely attesting to the construction accident, the existence and/or extent of Claimant D's injuries, and the necessity of Claimant D's medical treatment.

vvv.     On or about February 17, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Grimm caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim Form of his February 8, 2023, lumbar epidural steroid injection of Claimant D based on purported injuries. Such reports were submitted as if Claimant D's lumbar spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Grimm and based on such records, Grimm knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Grimm continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

www..     On or about February 17, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim Form of his February 8, 2023, lumbar epidural steroid injection of Claimant D based on purported injuries. Such reports were submitted as if Claimant D's lumbar spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged

accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

xxx.        On or about November 18, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB an examination report of his August 12, 2022, examination of Claimant D based on purported injuries. Such reports were submitted as if Claimant D's injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services

yyy.        On or about November 18, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB an examination report of his August 12, 2022, examination of Claimant D based on purported injuries. Such reports were submitted as if Claimant D's injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

zzz.        On or about December 12, 2022, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a Provider's Attestation and Statement of Medical Necessity, requesting authorization for prescription medication for Claimant D based on purported injuries. Such reports were submitted as if Claimant D's injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase

patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

aaaa.      On or about January 27, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Grimm caused to be transmitted by mail, facsimile or email to the NY WCB a Provider's Attestation and Statement of Medical Necessity, requesting authorization for prescription medication for Claimant D based on purported injuries. Such reports were submitted as if Claimant D's injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Grimm and based on such records, Grimm knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Grimm continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

bbbb.      On or about February 6, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Weinstein caused to be transmitted by mail, facsimile or email to the defense counsel a signed medical authorization form, which authorized the transmission of medical records from Weinstein to defense counsel of Claimant D's purported injuries. Such reports were submitted as if Claimant D's injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Weinstein and based on such records, Weinstein knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Weinstein continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

cccc.      On or about February 7, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the defense counsel a signed medical authorization form, which authorized the transmission of medical records from NY Ortho to defense counsel of Claimant D's purported injuries. Such reports were submitted as if Claimant D's injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary

nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

dddd.    On or about February 27, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Weinstein caused to be transmitted by mail, facsimile or email to the defense counsel a signed medical authorization form, which authorized the transmission of medical records from Weinstein to defense counsel of Claimant D's purported injuries. Such reports were submitted as if Claimant D's injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Weinstein and based on such records, Weinstein knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Weinstein continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

eeee.    On or about February 27, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Comprehensive & Orthopedic Spine Care caused to be transmitted by mail, facsimile or email to the defense counsel a signed medical authorization form, which authorized the transmission of medical records from Comprehensive & Orthopedic Spine Care to defense counsel of Claimant D's purported injuries. Such reports were submitted as if Claimant D's injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Comprehensive & Orthopedic Spine Care and based on such records, Comprehensive & Orthopedic Spine Care knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Comprehensive & Orthopedic Spine Care continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

ffff.    On or about March 28, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a Provider's Attestation and Statement of Medical Necessity, requesting authorization for physical therapy for Claimant D based on purported injuries. Such reports were submitted as if Claimant D's injuries were casually connected to Claimant D's

accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

gggg.    On or about March 28, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Ny Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a Provider's Attestation and Statement of Medical Necessity, requesting authorization for physical therapy for Claimant D based on purported injuries. Such reports were submitted as if Claimant D's injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

hhhh.    On or about March 30, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his March 7, 2023, examination of Claimant D based on purported right knee and right shoulder injuries.  Such reports were submitted as if Claimant D's purported right knee and right shoulder injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

iiii.    On or about March 30, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his March 7, 2023, examination of Claimant D based on purported right knee and right shoulder injuries.  Such

reports were submitted as if Claimant D's purported right knee and right shoulder injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

jjjj.      On or about July 11, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his March 7, 2023, examination of Claimant D based on purported right knee and right shoulder injuries. Such reports were submitted as if Claimant D's purported right knee and right shoulder injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

kkkk.      On or about March 30, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his March 7, 2023, examination of Claimant D based on purported right knee and right shoulder injuries. Such reports were submitted as if Claimant D's purported right knee and right shoulder injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

llll.        On or about July 11, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Grimm caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his June 28, 2023, examination of Claimant D based on purported injuries.  Such reports were submitted as if Claimant D's purported injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Grimm and based on such records, Grimm knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Grimm continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

mmmm.        On or about July 11, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his June 28, 2023, examination of Claimant D based on purported injuries.  Such reports were submitted as if Claimant D's  purported injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

nnnn.        On or about August 3, 2023, in furtherance of the Fraud Scheme, and in violation of 18  U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his July 26, 2023, right knee. Euflexxa injection of Claimant D based on purported right knee injuries.  Such reports were submitted as if Claimant D's purported right knee injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of  treatment,     prepared records reflecting same and thereafter transmitted them to obtain     payment     for     his services, increase patient referrals and provide the Legal Services     Defendants    with    a basis to obtain insurance benefits they would otherwise not be entitled.

oooo.        On or about August 3, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his July 26, 2023, right knee Euflexxa injection of Claimant D based on purported right knee injuries.  Such reports were submitted as if Claimant D's purported right knee injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

pppp.        On or about August 9, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim form and report of his August 2, 2023, right knee Euflexxa injection of Claimant D based on purported right knee injuries.  Such reports were submitted as if Claimant D's purported right knee injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident.  Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

qqqq.        On or about October 10, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Grimm caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim and a NYWC Progress Medical Narrative and report of his examination of Claimant D based on purported lumbar and cervical spine injuries. Such reports were submitted as if Claimant D's purported lumbar and cervical spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Grimm and based on such records, Grimm knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Grimm continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

rrrr.        On or about November 8, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Weinstein caused to be transmitted by mail, facsimile or email to the NY WCB an examination report of his November 8, 2023, examination of Claimant D based on purported lumbar and cervical spine injuries. Such reports were submitted as if Claimant D's purported lumbar and cervical spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Weinstein and based on such records, Weinstein knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Weinstein continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

ssss.        On or about November 8, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 and 1343, Comprehensive & Orthopedic Spine Care caused to be transmitted by mail, facsimile or email to the NY WCB an examination report of his November 8, 2023, examination of Claimant D based on purported lumbar and cervical spine injuries. Such reports were submitted as if Claimant D's purported lumbar and cervical spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Comprehensive & Orthopedic Spine Care and based on such records, Comprehensive & Orthopedic Spine Care knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Comprehensive & Orthopedic Spine Care continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

tttt.        On or about November 8, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim Form of his October 23, 2023, lumbar spine MRI of Claimant D based on purported lumbar spine injuries. Such reports were submitted as if Claimant D's purported lumbar spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Kolb and based on such records, Kolb knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kolb continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

uuuu.        On or about November 8, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb Radiology caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim Form of his October 23, 2023, lumbar spine MRI of Claimant D based on purported lumbar spine injuries. Such reports were submitted as if Claimant D's purported lumbar spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Kolb Radiology and based on such records, Kolb Radiology knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kolb Radiology continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled

vvvv.        On or about November 9, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Weinstein caused to be transmitted by mail, facsimile or email to the NY WCB an examination report of his November 8, 2023, examination of Claimant D based on purported lumbar and cervical spine injuries. Such reports were submitted as if Claimant D's purported lumbar and cervical spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Weinstein and based on such records, Weinstein knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Weinstein continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

wwww.        On or about November 9, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Comprehensive & Orthopedic Spine Care caused to be transmitted by mail, facsimile or email to the NY WCB an examination report of his November 8, 2023, examination of Claimant D based on purported lumbar and cervical spine injuries. Such reports were submitted as if Claimant D's purported lumbar and cervical spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Comprehensive & Orthopedic Spine Care and based on such records, Comprehensive & Orthopedic Spine Care knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Comprehensive & Orthopedic Spine Care continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

xxxx.        On or about December 14, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Weinstein caused to be transmitted by mail, facsimile or email to the NY WCB an operative report of his December 14, 2023, cervical decompression and fusion of C4-C6 of Claimant D based on purported cervical spine injuries. Such reports were submitted as if Claimant D's purported cervical spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Weinstein and based on such records, Weinstein knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Weinstein continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

yyyy        On or about December 14, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Comprehensive & Orthopedic Spine Care caused to be transmitted by mail, facsimile or email to the NY WCB an operative report of his December 14, 2023, cervical decompression and fusion of C4-C6 of Claimant D based on purported cervical spine injuries. Such reports were submitted as if Claimant D's purported cervical spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Comprehensive & Orthopedic Spine Care and based on such records, Comprehensive & Orthopedic Spine Care knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Comprehensive & Orthopedic Spine Care continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

zzzz.        On or about December 16, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kaplan caused to be transmitted by mail, facsimile or email to the NY WCB a report of his September 27, 2023, examination of Claimant D based on purported right and left knee injuries. Such reports were submitted as if Claimant D's purported right and left knee injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Kaplan and based on such records, Kaplan knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kaplan continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

aaaaa.    On or about December 16, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, NY Ortho caused to be transmitted by mail, facsimile or email to the NY WCB a report of his September 27, 2023, examination of Claimant D based on purported right and left knee injuries. Such reports were submitted as if Claimant D's purported right and left knee injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to NY Ortho and based on such records, NY Ortho knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, NY Ortho continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

bbbbb.    On or about December 19, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim Form of his November 16, 2023, cervical spine MRI of Claimant D based on purported cervical spine injuries. Such reports were submitted as if Claimant D's cervical spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Kolb and based on such records, Kolb knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kolb continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

cccc.    On or about December 19, 2023, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Kolb Radiology caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim Form of his November 16, 2023, cervical spine MRI of Claimant D based on purported cervical spine injuries. Such reports were submitted as if Claimant D's cervical spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Kolb Radiology and based on such records, Kolb Radiology knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Kolb Radiology continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

ddddd.    On or about January 3, 2024, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Weinstein caused to be transmitted by mail, facsimile or

email to the NY WCB an invoice and operative report of his December 14, 2023, anterior cervical decompression and fusion of C4-C6 of Claimant D based on purported cervical spine injuries. Such reports were submitted as if Claimant D's cervical spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Weinstein and based on such records, Weinstein knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Weinstein continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

eeeee.      On or about January 3, 2024, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Comprehensive & Orthopedic Spine Care caused to be transmitted by mail, facsimile or email to the NY WCB an invoice and operative report of his December 14, 2023, anterior cervical decompression and fusion of C4-C6 of Claimant D based on purported cervical spine injuries. Such reports were submitted as if Claimant D's cervical spine injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Comprehensive & Orthopedic Spine Care and based on such records, Comprehensive & Orthopedic Spine Care knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Comprehensive & Orthopedic Spine Care continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

fffff.       On or about January 3, 2024, in furtherance of the Fraud Scheme, and in violation of 18 U.S.C. §§ 1341 or 1343, Comprehensive & Orthopedic Spine Care caused to be transmitted by mail, facsimile or email to the NY WCB a Health Insurance Claim Form of his December 6, 2023, examination of Claimant D based on purported injuries. Such reports were submitted as if Claimant D's injuries were casually connected to Claimant D's accident and that treatment for such was warranted and necessary. These records, however, are false because no such accident occurred as demonstrated hereinabove and no such injuries existed as reflected by Claimant D's emergency room records. These records were available to Comprehensive & Orthopedic Spine Care and based on such records, Comprehensive & Orthopedic Spine Care knew or should have known that the treatments were neither necessary nor causally connected to the alleged accident. Notwithstanding the same, Comprehensive & Orthopedic Spine Care continued a course of treatment, prepared records reflecting same and thereafter transmitted them to obtain payment for his services, increase patient referrals and provide the Legal Services Defendants with a basis to obtain insurance benefits they would otherwise not be entitled.

IV.   **PLAINTIFF'S JUSTIFIABLE RELIANCE**

165.    Ionian has a duty to promptly and fairly pay for expenses incurred in connection with the claims made the basis of this lawsuit and others.

166.    The invoices and documentation supporting the Fraud Scheme submitted to Ionian, either directly or indirectly, the New York State Workers' Compensation Board, the New York Unified Court System, and others contained materially false statements and were designed to mislead and conceal materially false statements.

167.    As such, Ionian justifiably and reasonably relied on them as facially valid and incurred damages as a result.

V.   **DAMAGES**

168.    Plaintiff Ionian is a reinsurer which underwrites policies and provides reinsurance that covers the personal injury lawsuits filed and prosecuted by the Legal Service Defendants as part of the Fraud Scheme. As such, Ionian is a party directly and ultimately damaged by the Fraud Scheme.

169.    Due to Defendants' perpetration of the Fraud Scheme, Ionian has incurred expenses paid as reimbursement to primary insurers providing coverage for the lawsuits filed and/or prosecuted by the Legal Service Defendants on behalf of Claimants.

170.    But for Defendants' perpetration of the Fraud Scheme, Ionian's expenses paid as reimbursement to primary insurers would be less because the Claimants' injuries, if any, would be less severe and the medical services necessary to treat any accident-related injury, if any, would be less significant, resulting in lower settlement value of such lawsuits and thus, less litigation expenses.

171.    Due to Defendants' perpetration of the Fraud Scheme, Ionian has incurred general liability claim adjustment expenses progressively rising from $3,150,000 in 2018 to

$5,150,000 in 2019 (63.49% increase from 2018), to $6,150,000 in 2020 (19.42% increase from 2019), to $14,250,000 in 2021 (131.71% increase from 2020), to $16,250,000 in 2022 (14.04% increase from 2021), to $18,400,000 in 2023 (13.23% increase from 2022). This represents a 484% increase in effectively the three years after the COVID - 19 pandemic during 2020, which led to the single largest one-year decline for the construction industry in New York City since 1990. *See* Office of the New York State Comptroller, "The Construction Industry in New York City: Recent Trends and Impact of COVID-19," March 3, 2022, at 3. *See* https://www.osc.ny.gov/files/reports/osdc/pdf/report-3-2021.pdf, incorporated herein by reference, last accessed February 15, 2024.

172.    Further, during the period of 2021, 2022 and 2023, Ionian's net outstanding liability under general liability increased from $7,150,000.00 to $33,125,000 to $58,750,000 respectively, an increase of nearly 722%.

173.    The drastically escalating cost of construction-related claims in general liability areas stands in marked contrast to the overall decreasing number of workplace injuries, which in New York City reportedly decreased from 759 in 2018 to 554 in 2022 (a 27% decrease). *See e.g.*, "2022 New York City Construction Safety Report," at https://www.nyc.gov/assets/buildings/pdf/con_safe_2022.pdf, incorporated herein by reference, last accessed February 15, 2024. The number of workplace incidents decreased from 1,193 in 2018 to 751 in 2022, a 37% decrease. *Id.*

174.    In an April 2024 study, the New York Civil Justice Institute indicated that insurance costs in New York are higher than any other state and that insurance professionals warn that the market is headed toward a crisis that will have long term implications for

---

consumers." *See* *https://acrobat.adobe.com/id/urn:aaid:sc:us:2de7b5f8-2913-4ed4-8ec4-625d1ca07466, incorporated herein by reference, last accesses August 5, 2024.

175.     The study goes on to say that construction insurance costs are the highest when compared to nearby states such as Connecticut, New Jersey and Pennsylvania at a rate of 12.5% of a project's costs versus 2.5%, respectively. *Id.*

176.     Further, the study cites information that an average Labor Law 240(1) claim will settle for above $1 million, however, if there is a neck or back surgery involved, the claim value averages between $2 million to $3 million or more. *Id.*

177.     In the face of fraudulent insurance claims, much like the defendants' Fraud Scheme, the New York Legislature has introduced a bill making the staging of a construction accident and the encouraging and assisting the same, a Class E Felony in the State of New York. That bill is currently pending.

178.     Defendants' patterns of fraudulent conduct caused injury to Plaintiff in its business and property by reason of the aforesaid violations of state and federal law. Although it is not necessary for Plaintiff to calculate damages with specificity at this stage in the litigation (whereas Plaintiff's damages continue to accrue), Plaintiff's injuries include, but are not limited to the following:

    a.     Actual and consequential damages for the payments Plaintiff made as reimbursement for payments made directly to the Defendants and/or to others due to Defendants' pattern of fraudulent conduct in connection with the Fraud Scheme, the exact amount to be determined at trial.

    b.     Actual and consequential damages for the damage to Plaintiff's business including, but not limited to, expenses incurred for the administration of

these lawsuits and the retention of additional staff to perform investigative and support services for lawsuits due to Defendants' pattern of fraudulent conduct in connection with the Fraud Scheme, the exact amount to be determined at trial.

## VI.    CAUSES OF ACTION

### COUNT I
### RICO Violation (§ 1962(c))

179.    Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

180.    At all times relevant herein, Defendants constituted an "enterprise" as that term is defined in 18 U.S.C. § 1961(4) – that is, a group of individuals and legal entities associated in fact, which was engaged in, and the activities of which affected, interstate commerce, and foreign commerce. Each of the Defendants participated in the operation or management of the enterprise, which Gorayeb orchestrated, coordinated and led.

181.    In addition to any legitimate transactions, the course of conduct of this enterprise included a pattern of racketeering activity carried out by Defendants.

182.    Each of the Defendants knowingly and willfully associated with the association-in-fact enterprise and conducted and participated in the conduct of the enterprise's affairs, directly and indirectly, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

183.    The pattern of racketeering activity in which the Defendants engaged involved numerous specific acts and conducts as described in detail in this Complaint constituting mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343) and bribing

a witness under New York law (NY Penal Code § 215) – all of which is "racketeering activity" as defined in 18 U.S.C. § 1961(1)(A).

184.    The predicate acts of mail fraud, wire fraud, and bribing a witness or victim involved the transmission and use of false and misleading documentation in furtherance of the Defendants' scheme to defraud Plaintiff in connection with submitting, filing, prosecuting and asserting workers' compensation claims and personal injury lawsuits arising out of fraudulent construction accidents.

185.    As a result of the pattern of racketeering activity, Plaintiff has suffered damage to its business and property.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for:

a.    An award of Plaintiff's actual and consequential damages to be established at trial, and trebling of such damages pursuant to 18 U.S.C. § 1964;

b.    Plaintiff's reasonable attorneys' fees, expenses, costs, and interest;

c.    Injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in this Complaint; and

d.    Such other relief as the Court deems just and proper.

## COUNT II
## RICO Violation (§ 1962(d))

186.    Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

187.    From at least 2018 to the present, Defendants did unlawfully, knowingly, and intentionally, combine, conspire, confederate, and agree together with each other, and with others whose names are known or unknown, to conduct and participate, directly

and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity set forth herein in violation of 18 U.S.C. § 1962(d).

188.    The pattern of racketeering activity in which the Defendants intentionally combined to engage in or otherwise conspired to engage in involved numerous specific acts and conducts as described in detail in this Complaint constituting mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343) and bribing a witness under New York law (NY Penal Code § 215) – all of which is "racketeering activity" as defined in 18 U.S.C. § 1961(1)(A).

189.    The predicate acts of mail fraud, wire fraud, and bribing a witness or victim also involved the transmission and use of false and misleading documentation in furtherance of the Defendants' scheme to defraud Plaintiff in connection with submitting, filing, prosecuting and asserting personal injury lawsuits arising out of fraudulent construction accidents.

190.    As a result of the pattern of racketeering activity, Plaintiff has suffered damage to its business and property.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for:

    a.    An award of Plaintiff's actual and consequential damages to be established at trial, and trebling of such damages pursuant to 18 U.S.C. § 1964;

    b.    Plaintiff's reasonable attorneys' fees, expenses, costs, and interest;

    c.    Injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in this Complaint; and

    d.    Such other relief as the Court deems just and proper.

## <u>COUNT III</u>
## <u>Common Law Fraud</u>

191.    Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

192.    The Legal Service Defendants made misrepresentations of facts, deliberately concealed, omitted material facts that they had a duty to disclose in connection with their prosecution of Claimants' lawsuits.

193.    The Medical Provider Defendants made misrepresentations of facts, deliberately concealed, omitted materials facts that they had a duty to disclose in connection with their claims for reimbursement and/or payment under New York law, which they knew or should have known would also be used in connection with the Legal Service Defendants' prosecution of Claimants' lawsuits.

194.    These misrepresentations of fact by Defendants included, but were not limited to, the material misrepresentations of fact made in asserting the legitimacy of accidents, the existence of injuries and the necessity of treatment.

195.    Defendants' representations were false or required disclosure of additional facts to render the information furnished not misleading.

196.    Defendants made these misrepresentations in furtherance of the scheme to defraud Plaintiff by submitting claims for general liability insurance benefits.

197.    Defendants' misrepresentations were known to be false from the onset and were made for the purpose of inducing Plaintiff to make payments for claims that were not legitimate.

198.    Plaintiff reasonably and justifiably relied, to its detriment, on the truthfulness of Defendants' representations concerning their eligibility to receive payments of general

liability insurance benefits, and without knowledge of Defendants' scheme and artifice to defraud them.

199.    Defendants knew, or should have known, that Plaintiff would rely on and intended that they so rely on their truthfulness.

200.    But for the Defendants' misrepresentations, omissions, concealment of material facts, and fraudulent course of conduct, Plaintiff would not have paid general liability insurance benefits.

201.    Plaintiff at no time knew or had reason to know in the exercise of due diligence or reasonable care that Defendants were engaged in misrepresentations, omissions, and fraudulent conduct.

202.    As a direct and proximate cause of Defendants' misrepresentations, omissions, concealment of material facts, and fraudulent course of conduct by Defendants, Plaintiff has been damaged. Plaintiff's damages include, but are not necessarily limited to, benefit payments, administration costs, investigative and defense costs paid by Plaintiff's to Defendants or caused by Defendants.

203.    Because Defendants' conduct was knowing, intentional, willful, wanton, and reckless, Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for:

    a.    An award of Plaintiff's actual and consequential damages to be established at trial;

    b.    Plaintiff's costs, including, but not limited to, investigative costs incurred in the detection of Defendant's illegal conduct; and

      c.      Such other relief as the Court deems just and proper.

<div align="center">

**Count IV**
**Declaratory Relief Pursuant to 28 U.S.C. § 2201**

</div>

204.    Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as though set forth in their entirety.

205.    Pursuant to 18 U.S.C. § 2201(a), the Court may determine the rights and legal obligations of the parties.

206.    There is an actual case and controversy between Plaintiff on the one hand, and Defendants on the other hand, as to all charges for examinations, treatments, testing, injections, surgeries, and physical therapy that have not been paid to date and through the pendency of this litigation. Plaintiff contends these Defendants are not entitled to reimbursement for any of these charges.

207.    Because these Defendants have made false and fraudulent statements and otherwise engaged in the fraudulent conduct described above with the intent to conceal, mislead and misrepresent material facts and circumstances regarding each claim submitted, these Defendants are not entitled to any reimbursement for alleged services relating to any of the claims at issue.

WHEREFORE, Plaintiff demands judgment against Defendants for:

      a.      A declaration that Defendants, at all times relevant, have submitted claims and bills to Plaintiff for staged accidents and/or unnecessary healthcare services in violation of New York law;

      b.      Declare that Defendants' activities are unlawful;

    c.      Declare that Plaintiff has no obligation to pay or reimburse any pending, previously denied, and/or general liability insurance claims or related expenses submitted or caused by the Defendants; and

    d.      Such other relief as the Court deems just and proper.

## VII.   JURY TRIAL DEMAND

208.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims.

Dated: January 6, 2025

Respectfully submitted,

**THE WILLIS LAW GROUP, PLLC**

By:  */s/ William J. Clay*

**WILLIAM J. CLAY** *(admitted pro hac)*
**MICHAEL A. GRAVES**
**AARON E. MEYER**
1985 Forest Lane
Garland, Texas 75042
Telephone:  214-736-9433
Facsimile:  214-736-9994
Service Email: service@thewillislawgroup.com

***ATTORNEYS FOR THE PLAINTIFF***
**IONIAN RE, LLC**