UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IONIAN RE, LLC, | **DEFENDANTS' JOINT NOTICE OF SECOND CIRCUIT AUTHORITY AFFIRMING DISMISSAL OF *ROOSEVELT ROAD v. SUBIN*, *et al*.** |
| Plaintiffs, | |
| - vs - | |
| GORAYEB & ASSOCIATES, P.C., *et al*. | |
| Defendants. | Case No.: 1:24-cv-07098-WFK-PK |

The Defendants, by their attorneys, file this Joint Notice of Second Circuit Authority to inform the Court of the July 22, 2026 Summary Order issued by the United States Court of Appeals for the Second Circuit affirming dismissal of both the First Amended Complaint and the Second Amended Complaint in *Roosevelt Road Re, LTD. and Tradesman Program Managers, LLC v. Herbert S. Subin, et. al*, No. 24-cv-05033 (the "*Subin* proceeding"). The Second Circuit's Summary Order is attached as Exhibit 1.

## Background

On June 20, 2025 (ECF Doc. 171), the Defendants here filed an initial Notice of Additional Authority to inform this Court of Judge Gonzalez's June 19, 2025 Memorandum and Order in the *Subin* proceeding (hereinafter "June 19 Decision") holding that the insurer-plaintiffs did not have standing to pursue RICO claims because the damages alleged were too remote and attenuated to satisfy the Supreme Court's causation standard set forth in *Anza v. Ideal Steel Supply Co.*, 547 U.S. 451 (2006), *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) and *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992).

In the *Subin* proceeding, Roosevelt Road and Tradesman filed a Second Amended Complaint ("SAC") on July 20, 2025. Judge Gonzalez thereafter entered his September 16, 2025

4898-1783-1871.1

Decision rejecting the Second Amended Complaint and deemed the First Amended Complaint ("FAC"), the one dismissed with the June 19 Decision, as the operative pleading. In doing so, Judge Gonzalez dismissed with prejudice the RICO claims asserted under 18 U.S.C. § 1962(c) (the substantive RICO claim) and § 1962(d) (RICO conspiracy), as well as the Declaratory Relief claim under 28 U.S.C. § 2201.

Roosevelt Road and Tradesman appealed both of Judge Gonzalez's Decisions to the Second Circuit Court of Appeals.

Presently before this Court is Plaintiffs' Motion for Leave to Amend (ECF 107). Ionian seeks to pursue RICO claims based on allegations in the proposed Second Amended Complaint ("SAC") that it is not a reinsurer, but is akin to a primary insurer that incurred "first-dollar liability" based on "the terms of [a] captive agreement." (SAC ¶ 3, 28). The allegations in the proposed SAC characterize Ionian in a manner substantively identical to Roosevelt Road's role alleged in the SAC filed in the *Subin* proceedings.

**Second Circuit Summary Order**

The Second Circuit's July 22, 2026 Summary Order affirmed dismissal of both the FAC and the SAC in the *Subin* proceeding for failure to plead proximate causation under RICO.

In affirming dismissal of the FAC, the Second Circuit held that the Plaintiffs incurred expenses "only because (i) they had to pay and process claims for *another* insurance company, which (ii) had to cover for their insureds, *i.e.*, the employers, owners, general contractors, and other entities named by Defendants and their associates in the workers' compensation claims and general liability lawsuits. Such daisy chains of causation are 'too remote' to establish RICO standing." (Summary Order, p. 6). The Second Circuit's affirmance of dismissal of the FAC

expressly supports this Court's April 16, 2026 Decision and Order (ECF 106) dismissing the FAC here.

Moreover, the Second Circuit's affirmation of dismissal of the SAC in the *Subin* proceeding governs the motion currently pending before the Court in this case. The Second Circuit held that the allegations of a primary insurer who purportedly paid "first dollar" expenses to defend the entities against which the workers' compensation and general liability claims were made do not change the analysis (Summary Order, p. 8):

> "We have previously explained that insurers 'who are obligated to pay the …
> expenses of another may [generally] not recover [under RICO] against the [party]
> who caused the damage, because their injuries are indirect since they derive
> wholly from the injuries sustained by the third party.' *Laborers Loc. 17*, 191 F.3d
> at 237.

The Defendants here argue that leave to amend should be denied on this very basis. (See Defendants' Joint Memorandum, ECF 110, p. 13). As the Second Circuit held in its Summary Order, these claims "are 'purely contingent' *both* 'on harm to third parties,' [*Laborers Loc. 17*], at 239, and on Plaintiffs' side-deal, through which they purportedly switch roles with the primary insurer." (Summary Order, p. 8-9) (emphasis in original).

The Second Circuit's Summary Order also supports dismissal of claims for RICO conspiracy and declaratory judgment because the fate of such claims depends on the underlying RICO substantive claim. (Summary Order, p. 9, fn. 2).

Now that the Second Circuit has substantively decided this issue and held that the claims of an insurer, whether a primary insurer or reinsurer, are insufficient to establish RICO standing, this Court must deny the pending motion for leave to amend.

4898-1783-1871.1

Dated: New York, New York
       July 23, 2026

                         *NIXON PEABODY LLP*

                         *By:*  */s/Joseph J. Ortego*
                               Joseph J. Ortego

                         Tower 46, 55 West 46th Street, 24th Floor
                         New York, NY 10036-4120
                         (212) 940-3000
                         *Email*: jortego@nixonpeabody.com
                         *Attorneys for Defendants*
                         *Gorayeb & Associates, PC and Christopher Gorayeb*


TO:   **THE WILLIS LAW GROUP, PLLC**
       Michael A. Graves
       William Clay
       Aaron Meyer
       Kirk Willis
       1985 Forest Lane
       Garland, Texas 75042
       Tel: (214)-736-9433
       Email: mgraves@thewillislawgroup.com
           *wclay@thewillislawgroup.com*
           *ameyer@thewillislawgroup.com*
           *kwillis@thewillislawgroup.com*
       *Attorneys for Plaintiffs*


CC:    All Defendants' Counsel of Record

4898-1783-1871.1

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of July, two thousand twenty-six.

PRESENT:
> RICHARD C. WESLEY,
> RICHARD J. SULLIVAN,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

_____

ROOSEVELT ROAD RE, LTD., TRADESMAN
PROGRAM MANAGERS, LLC,

> *Plaintiffs-Appellants*,

> v.                                          No. 25-2560

HERBERT S. SUBIN, ERIC D. SUBIN, JORGE
ARTURO GONZALEZ LUPI, JOHN DOES 1-50,

*Defendants-Appellees,*

v.

SUBIN ASSOCIATES, LLP, PAULINA
HURTADO, GARY S. PARK, MCDONALD
WORLEY,
               *Defendants.*

_____

| | |
|---|---|
| **For Plaintiffs-Appellants:** | JAMES J. MAHON (Kenneth Lambert, William J. Clay, Nathan W. Shackelford, Bret D. Walsh, *on the brief*), The Willis Law Group, Garland, TX. |
| **For Defendants-Appellees:** | ERIK A. GOERGEN (Joseph J. Ortego, Nixon Peabody LLP, New York, NY, *on the brief*), Nixon Peabody LLP, Buffalo, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Hector Gonzalez, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the October 3, 2025 judgment of the district court is **AFFIRMED.**

Roosevelt Road Re, Ltd. ("Roosevelt"), a reinsurance company, and Tradesman Program Managers, LLC ("Tradesman"), a management agency that provides services to insurers and reinsurers (collectively, "Plaintiffs"), appeal from

the district court's judgment (i) dismissing their first amended complaint ("FAC"); and (ii) rejecting the second amended complaint ("SAC") and denying leave to amend.

In a nutshell, Plaintiffs allege that Defendants – personal-injury lawyers and their purported accomplices – "recruited construction workers" to "stag[e] . . . fake construction accidents at various construction sites throughout New York" and obtain "fraudulent medical documentation." App'x at 64–65. Defendants and their accomplices then sought to "profit" by filing bogus workers' compensation claims with the New York State Workers' Compensation Board against the construction workers' employers and phony general liability claims in New York State courts "against . . . various parties involved with the construction project[s]," including "owner[s], general contractor[s], [and] construction manager[s]." *Id.* According to Plaintiffs, this conduct violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) & 1964(c).

"We review *de novo* a district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiffs." *Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012). Meanwhile, "[w]e review a district court's denial of leave to amend for

3

abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which case we review the legal conclusion *de novo.*" *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224 (2d Cir. 2017) (internal quotation marks omitted). Because *both* the FAC and SAC failed to adequately allege that Defendants' purported racketeering activity was the proximate cause of Plaintiffs' injuries, we affirm the judgment of the district court. *See Yerkyn v. Yakovlevich*, 164 F.4th 224, 225 (2d Cir. 2026) ("[W]e are free to affirm an appealed decision on any ground [that] finds support in the record, regardless of the ground upon which the trial court relied." (internal quotation marks omitted)).

## I. The FAC Fails to Plead Proximate Causation Under RICO.

RICO "provides a private cause of action" – and treble damages – "for 'any person injured in his business or property *by reason of*'" unlawful "'racketeering activity.'" *Hemi Grp. v. City of New York*, 559 U.S. 1, 6 (2010) (plurality opinion) (alteration adopted and emphasis added) (first quoting 18 U.S.C. § 1964(c); and then quoting *id.* § 1962(c)). But the statute does not empower just anyone who has suffered the consequences of a RICO scheme to sue. As the Supreme Court has recently reiterated, "[section] 1964(c)'s 'by reason of' language demands 'some *direct relation* between the injury asserted and the injurious conduct alleged.'" *Med.*

*Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) (emphasis added) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). A RICO plaintiff thus must allege "proximate cause," *Holmes*, 503 U.S. at 268, and "whenever [a] plaintiff's theory of causation requires moving 'well beyond the first step'" in the causal analysis, "it 'cannot meet RICO's direct relationship requirement,'" *Med. Marijuana*, 604 U.S. at 612 (quoting *Hemi Grp.*, 559 U.S. at 10). In other words, if a plaintiff's RICO arguments rely on several "step[s] in the causal chain," *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 142 (2d Cir. 2018) (internal quotation marks omitted) – *i.e.*, alleging that the defendant caused some harm to third parties, which in turn caused follow-on harm to the plaintiff – then its claims will fail.

Plaintiffs assert that they were harmed by the alleged scheme here in various ways. In particular, Roosevelt contends that it had to "reimburse[] . . . primary insurers" at higher rates and pay litigation expenses, while Tradesman maintains that it "sustained significant damage in connection with its management of the policies" because it had to devote resources to administering and investigating illegitimate claims. App'x at 82–84. Plaintiffs further argue that although the entities against whom the workers' compensation and general liability claims were made (*i.e.*, the employers, owners, general contractors, etc.) might *seem* to be the

parties most affected by fraudulent claims, "insurers and claims administrators are the ultimate source for payment and approval of [those] claims" and thus are the most directly injured by the fraud scheme. Pls. Br. at 54–55.

We are not convinced. While the alleged RICO scheme might have "ultimate[ly]," *id.* at 54, harmed Plaintiffs, "[m]ultiple steps . . . separate the alleged fraud from the asserted injury," *Hemi Grp.*, 559 U.S. at 15. Plaintiffs incurred expenses only because (i) they had to pay and process claims for *another* insurance company, which (ii) had to cover for their insureds, *i.e.*, the employers, owners, general contractors, and other entities named by Defendants and their associates in the workers' compensation claims and general liability lawsuits.

Such daisy chains of causation are "'too remote'" to establish RICO standing. *Id.* at 9 (alteration adopted) (quoting *Holmes*, 503 U.S. at 271). After all, Plaintiffs were injured not only because of the fraud scheme, but also because they decided to enter a complex series of contracts that left them on the hook for harms to third (or even fourth) parties. *See Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999) ("[W]here a plaintiff complains of injuries that are wholly derivative of harm to a third party, plaintiff's [RICO]

6

injuries are generally deemed indirect and as a consequence too remote, as a matter of law, to support recovery.").

Furthermore, "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." *Holmes*, 503 U.S. at 269. Plaintiffs allege a "drastic[] escalati[on] . . . of construction[-]related claims" that led to an "increase[]" of Roosevelt's "net outstanding liability" and "damage to Tradesman's business." App'x at 83, 85. But it is difficult to imagine how a court could untangle the impact of Defendants' purported fraud from other factors that may have harmed Plaintiffs' bottom line. *See Laborers Loc. 17*, 191 F.3d at 240.

Finally, Plaintiffs assert that "they are better situated and have more incentive to sue" than either the primary insurance company or the insured parties. Reply Br. at 25–26. In analyzing whether a RICO injury is sufficiently direct, courts have considered "whether better situated plaintiffs would have an incentive to sue." *Hemi Grp.*, 559 U.S. at 11–12. But Plaintiffs' argument that they are best situated to bring suit rests – in circular fashion – on their unsupported insistence that they were most directly injured. Precedents from both the Supreme Court and this Court, however, require us to analyze which party was injured at

the "first step," not to pore over the chain of causation speculating about slight differences in incentives until we reach the party that seems to have the greatest motivation to sue. *See, e.g., id.* at 10, 12.

## II.    The SAC Also Fails to Plead Proximate Causation Under RICO.

The SAC's allegations do not change this analysis.  Its new paragraphs allege that Plaintiffs entered "agreements" with the primary insurer of the entities against which the workers' compensation and general liability claims were made, and that those agreements "substituted" Plaintiffs into "a primary [insurance] role."  App'x at 329.  Plaintiffs provide few details about the nature of this substitution and the agreements that created it.  But even accepting those allegations as true, the harm suffered by Plaintiffs is still "well beyond the first step."  *Med. Marijuana*, 604 U.S. at 612.

We have previously explained that insurers "who are obligated to pay the . . . expenses of another may [generally] not recover [under RICO] against the [party] who caused the damage, because their injuries are indirect since they derive wholly from the injuries sustained by the third party."  *Laborers Loc. 17*, 191 F.3d at 237.  Here, Plaintiffs' claims are "purely contingent" *both* "on harm to third parties," *id.* at 239, and on Plaintiffs' side-deal, through which they purportedly

switched roles with the primary insurer. *See Holmes*, 503 U.S. at 271 (finding "the link . . . too remote" to support RICO claim by Securities Investor Protection Corporation ("SIPC") against defendant whose alleged stock manipulation caused broker-dealers to go bankrupt and thus to fail to pay their customers, who subsequently received reimbursement from SIPC).[1]

Thus, for the reasons explained above, neither the FAC nor the SAC pleaded sufficient facts to establish RICO standing, and the district court did not err in dismissing both pleadings.[2]

---

[1] This calculus might change, of course, if the insurer were the *direct* target of the fraud – such as when (i) an insured party conspires with others to receive unnecessary medical services, *see, e.g.*, *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 671 (5th Cir. 2015) (cited in Reply Br. at 22); or (ii) a RICO defendant directly deceives an insurance company by submitting claims for services that it never performed, *see, e.g.*, *Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260, 263 (D. Conn. 2004) (cited in Reply Br. at 18). In such cases, the defendant defrauds the insurance company itself – not a third party who then recovers from the insurance company. That is not the situation here.

[2] Plaintiffs also asserted claims for RICO conspiracy, *see* 18 U.S.C. § 1962(d), declaratory judgment, and violations of state law. But the fate of these claims, as the district court found and Plaintiffs concede, depends on whether the underlying substantive RICO claim survives. While the declaratory-judgment and RICO-conspiracy theories piggyback directly on that claim, the state-law claims relied on the district court's discretionary decision about whether to invoke supplemental jurisdiction over them. And "because all of [Plaintiffs'] federal claims were properly resolved, the district court did not err in declining to exercise supplemental jurisdiction over any [of their] state[-]law claim[s]." *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 187 (2d Cir. 2025); *see also* 28 U.S.C. § 1367. Nonetheless, the district court properly dismissed the state-law claims without prejudice, meaning that Plaintiffs can still pursue those claims in state court.

\*      \*      \*

While Plaintiffs allege a disturbing pattern of fraud, RICO does not create a universal cause of action that permits parties to turn state-law claims – which Plaintiffs also asserted here – into federal suits seeking treble damages. *See Holmes*, 503 U.S. at 274 ("Allowing suits by those injured only indirectly would open the door to massive and complex damages litigation, which would not only burden the courts, but would also undermine the effectiveness of treble-damages suits." (alterations adopted and internal quotation marks omitted)). By design, "RICO's direct-relationship requirement" constrains civil RICO claims and may "present an insurmountable obstacle" even to parties that have suffered real harms. *Med. Marijuana*, 604 U.S. at 612–13; *see Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 348 (2d Cir. 2003) ("[O]ur cases have held RICO plaintiffs to a more stringent showing of proximate cause than would be required at common law." (internal quotation marks omitted)). Put simply, if Plaintiffs want relief, they must look to sources other than RICO.

We have considered Plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court.

10